EVANS ET AL., RESPONDENTS, v. CITY OF HELENA ET AL., APPELLANTS.

(No. 4,894.)

(Submitted July 1, 1921. Decided July 6, 1921.)

[199 Pac. 445.]

*Cities and Towns—Special Improvements—Departure from Resolution of Intention—Void Contract—Injunction—Bonds and Warrants—Issuance at Discount Prohibited.*

Cities and Towns—Special Improvements—Departure from Resolution of Intention not Permitted.
   1.  In its resolution of intention to create a special improvement district, the city council must describe the character and nature of the contemplated improvements with sufficient particularity to advise the taxpayer affected, and the improvements to be made must correspond substantially with those set forth in the resolution, and no material change or departure therefrom can be made.

Same—Special Improvements—Material Departure from Resolution of Intention—Injunction.
   2.  Under a resolution of intention to create a special improvement district for the purpose of paving streets, with the necessary excavations, cutting, filling, *etc.*, and "incidental work," *held* that defendant city was properly enjoined from entering into a contract the provisions of which departed substantially from the purposes set forth in the resolution, in that they included reduction in the street widths and the construction of new parking, curbing and storm sewers, each of which constitutes a distinct city improvement under Chapter 89, Laws of 1913, as amended by Chapter 142, Laws of 1915, and none of which was therefore subject to inclusion under the term "incidental work."

60 Mont.—37

Same—Special Improvement Bonds or Warrants—Issuance at Discount Prohibited.

3. *Held*, under section 26 of Chapter 89, Laws of 1913, that the city council has no power to issue bonds or warrants at a discount, in payment of special improvement work, and that therefore a contract let to one who in making out his bid took into consideration the fact that the warrants he would receive were worth only ninety cents on the dollar, and therefore added ten per cent to the actual cost, was invalid as an attempt to do indirectly what the council was prohibited from doing directly.

*Appeal from District Court, Lewis and Clark County; A. J. Horsky, Judge.*

ACTION by Bertha M. Evans and others against the city of Helena and others. From an order granting a temporary injunction, defendants appeal. Affirmed.

*Mr. E. C. Day,* for Appellants, submitted a brief and argued the cause orally.

The decision of the city council that the property of the plaintiffs within the exterior boundaries of the district was specially benefited is binding upon the court in the absence of evidence that the council acted arbitrarily, and in the absence of protests on the ground of nonbenefit. The legislature has conferred upon the city council the power to determine the boundaries of the district and the property especially benefited, and that to be included or excluded. That determination is conclusive upon the court, and those who fail to object to the inclusion of their property cannot afterward be heard to assert that it is not benefited. The district rule is a legislative declaration that all property included in the district is benefited, and that the benefit accrues proportionately unless some fact is shown which takes the plaintiffs' property out of the general class. These principles have been so often asserted and reaffirmed by this court, that a mere citation of the Montana cases ought to be sufficient. (*McMillan* v. *City of Butte,* 30 Mont. 220, 76 Pac. 203; *Power* v. *City of Helena,* 43

3. Construction of statute prohibiting sale of municipal bonds for less than par, see note in Ann. Cas. 1913E, 85.

Mont. 336, 36 L. R. A. (n. s.) 39, 116 Pac. 415; *Shapard* v. *City of Missoula,* 49 Mont. 269, 141 Pac. 544; *Mansur* v. *City of Polson,* 45 Mont. 585, 125 Pac. 1002; *Beck* v. *Holland,* 29 Mont. 234, 74 Pac. 410.) The power to lay out, establish, open, alter, widen, extend, grade, pave or otherwise improve streets is lodged entirely in the city council. (Rev. Codes, sec. 3259, subd. 6; Improvement Dist. Law, Laws 1913, Chap. 89, p. 394, Rev. Codes Supp., p. 506.) The power to create special improvement districts for the making of street improvements is also vested in the city council. (Rev. Codes, sec. 3259, subd. 80; Rev. Codes Supp., Vol. 3, p. 507; *Shapard* v. *City of Missoula,* 49 Mont. 269, 141 Pac. 544.) The council having complied with the statutory provisions for creating the district, the objection that the property will not be benefited at all cannot be urged except as to specific lots, where it is shown that the assessment is a flagrant abuse of power, arbitrary in character, and amounts in fact to a confiscation of the particular property. General allegations, such as the complaint contains, are not sufficient. (*French* v. *Barber Asphalt Co.,* 181 U. S. 324, 45 L. Ed. 879, 21 Sup. Ct. Rep. 625; *Houck* v. *Little River Drainage Dist.,* 239 U. S. 254, 60 L. Ed. 266, 36 Sup. Ct. Rep. 58; *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112, 41 L. Ed. 369, 17 Sup. Ct. Rep. 56; *Miller & Lux* v. *Sacramento etc.,* 182 Cal. 252, 187 Pac. 1041, 1046; affirmed by Sup. Ct. U. S., April 11, 1921, Adv. Sheets, 474.) If the assessment proves to be arbitrary or confiscatory by reason of any fact, relief can be had by the means set forth in section 17 (Rev. Codes Supp. 516), or, if the council refuses relief, then by appeal to the courts.

The legislature has the power to provide for and compel local improvements, and in the exercise of this power, where opportunity to be heard is given, no constitutional rights are violated. (*Billings Sugar Co.* v. *Fish,* 40 Mont. 256, 20 Ann. Cas. 264, 26 L. R. A. (n. s.) 973, 106 Pac. 565.) In the absence of any showing of fraud or arbitrary conduct on the part of the city council, its findings, by the passage of the reso-

lution creating the district that the property included in the district has been benefited, is conclusive. To permit evidence of value of benefits, or salability or nonsalability of property, would be to substitute the court's opinion for that of the city council. (*Brougham* v. *Kansas City,* 263 Fed. 115.) Failure of the property owner to object to the inclusion of his property in the district waives the objection and makes the decision of the city council final. (*Duncan* v. *Ramish,* 142 Cal. 686, 76 Pac. 661; *City of Denver* v. *Dumars,* 33 Colo. 94, 80 Pac. 114; *Brown* v. *Drain,* 187 U. S. 635, 47 L. Ed. 343, 23 Sup. Ct. Rep. 842; affirming the decision of the circuit court of appeals, 112 Fed. 582, and *King* v. *Portland,* 184 U. S. 61.)

Persons whose property is included in the district cannot be heard to object that property which might have been benefited has been excluded. (*Minnesota & M. Land & Imp. Co.* v. *City of Billings,* 111 Fed. 972, 50 C. C. A. 70.) The objection is also waived by failure to raise it by protest. (*Spalding* v. *City of Denver,* 33 Colo. 172, 80 Pac. 126.) It will be noted that the area of the property of the plaintiffs is less than eight (8) per cent of the total area of the property included in the district. To hold that this percentage of objecting property can invoke the court to set aside the creation of the district on the ground that their property is not specially benefited would be to permit the courts to destroy the legislative expression of the city council at the request of a percentage of the property affected, which would not be sufficient in area to require such a decision by the city council when applied to directly by a like area.

Evidence that property other than that of the plaintiffs will not be benefited is not admissible. No one can be heard to question the validity of a statute, or the action of a governmental agency unless, and except as, his interests have been or are about to be injured by the threatened action. (*Barth* v. *Pock,* 51 Mont. 418, 155 Pac. 282.)

That the property of the plaintiffs will not be increased in salable value by an amount substantially equal to the cost of

the improvement, the proportionate amount of which is to be assessed against the property, is not of itself sufficient to constitute a taking of property without compensation or to result in depriving the owner of it without due process of law.  (*City of Kalispell* v. *School Dist.*, 45 Mont. 221, Ann. Cas. 1913D, 1101, 122 Pac. 742; *Louisville & N. R. Co.* v. *Barber Asphalt Paving Co.*, 197 U. S. 430, 49 L. Ed. 819, 25 Sup. Ct. Rep. 466.)

An especially interesting case is that of *Miller & Lux* v. *Sacramento etc. Drainage Dist.*, 182 Cal. 252, 187 Pac. 1041, where land which had already been reclaimed from its swamp condition was included in a drainage district which also sought to effect flood control over a large area.

No fact was shown at the hearing which would justify the conclusion that the property of the plaintiffs had been arbitrarily or improperly included in the district, or that there is any reason for setting aside the presumption that their property would share ratably in the benefits to accrue to a city residence district from the making of an improvement such as that proposed.  (*Mount St. Mary's Cemetery* v. *Mullins*, 248 U. S. 501, 63 L. Ed. 383, 39 Sup. Ct. Rep. 173.)

The district being lawfully created, the method of paving the street is within the discretion of the city council, which will not be controlled by the courts except for abuse of such discretion.

In states where the city council is given power "to lay out, establish, open, alter, widen, grade, pave or otherwise improve" streets, as is the case in Montana (Rev. Codes, sec. 3259, subd. 6), it has been frequently held that the city council has the power to fix the width of the pavement, put a strip of parking in the center, and exercise general powers over the width of its traveled ways.  (McQuillin on Municipal Corporations, sec. 1835; *City of Mt. Carmel* v. *Shaw*, 155 Ill. 37, 46 Am. St. Rep. 311, 27 L. R. A. 580, 39 N. E. 584; *West Chicago etc. Commrs.* v. *Farber*, 171 Ill. 146, 49 N. E. 427; *Thompson* v. *City of Highland Park*, 187 Ill. 265, 58 N. E. 328; *Bekkedahl*

v. *Westby,* 140 Wis. 230, 122 N. W. 727; *Downing* v. *Des
Moines,* 124 Iowa, 289, 90 N. W. 1066; *Kittinger* v. *City of
Buffalo,* 148 N. Y. 332, 42 N. E. 803; *Fuller* v. *City of Grand
Rapids,* 105 Mich. 529, 63 N. W. 530.) The changing of the
width of the paved highway is not a discontinuance of a street,
but a change in the character of the public use, which is
entirely within the control of the council. (*Bekkedahl* v.
*Westby; City* v. *Shaw, supra.*) There are only two limitations
upon the exercise of the power, namely, that the improvement
when made must not be materially different from that de-
scribed in the resolution of intention, and the cost must not be
materially increased. (*Mansur* v. *City of Polson, supra.*)

The contract is not invalid because the price exceeds the
original estimate. (*Mellen* v. *City of Glenwood* (Iowa), 176
N. W. 373.)

The contract does not provide for the bonds to be received
at less than their face value. The law requires the contractor
to accept the bonds at their face value in payment for work
done, and prohibits the council from delivering bonds under
any other terms. That the bidder took into consideration his
ability to sell the bonds, the amount to be realized, the dif-
ference in rates of interest on money borrowed, and the readi-
ness with which the bonds could be disposed of, in determining
the amount in cash which it would cost him to do the work,
as testified to by Thomson, is a natural inference, and one
which the law contemplated. It is a condition which arises
in the case of every letting, and the elements which enter
into the value of the work or the cost of doing it varies with
each bidder. And yet, the legislature has not seen fit to
provide for a sale of the bonds by the city, in lieu of a
delivery to the contractor, as is provided in section 26 of
the Act, in the case of bonds issued in payment of property
taken by the city. The statutory prohibition is "that no war-
rants or bonds shall be delivered or received in payment of a
less sum than its face value." There is nothing in the evidence

to warrant the assumption that this provision has been or will be violated.

*Mr. C. B. Nolan, Mr. Wm. Scallon* and *Mr. A. W. O'Rourke,* for Respondents, submitted a brief; *Mr. Nolan* argued the cause orally.

The resolution of intention and the giving of the notice are jurisdictional.    (*Cooper* v. *City of Bozeman,* 54 Mont. 277, 169 Pac. 801; *Kohn* v. *City of Missoula,* 50 Mont. 75, 144 Pac. 1087; *Shapard* v. *City of Missoula,* 49 Mont. 269, 141 Pac. 544; *Harvey* v. *Town of Townsend,* 57 Mont. 407, 188 Pac. 897; *Hinzeman* v. *City of Deer Lodge,* 58 Mont. 369, 193 Pac. 395; *Mansur* v. *City of Polson,* 45 Mont. 585, 125 Pac. 1002; *Allen* v. *City of Butte,* 55 Mont. 205, 175 Pac. 595; *Boyle* v. *City of Butte,* 55 Mont. 209, 175 Pac. 596.)

Necessity for describing with some particularity nature of improvements.    (*Mansur* v. *City of Polson,* 45 Mont. 585, 125 Pac. 1002; *Pacific Paving Co.* v. *Verso,* 12 Cal. App. 362, 107 Pac. 590; *Bay Rock Co.* v. *Bell,* 133 Cal. 150, 65 Pac. 299; *Cass* v. *People ex rel. Kochersperger,* 166 Ill. 126, 46 N. E. 729, 47 N. E. 368; *Sanger* v. *City of Chicago,* 169 Ill. 286, 48 N. E. 309; *Lambert* v. *Cummings,* 2 Cal. App. 642, 84 Pac. 266; *Fay* v. *Reed,* 128 Cal. 357, 60 Pac. 927; *City of Geneseo* v. *Brown,* 250 Ill. 165, 95 N. E. 172; *City of Kirksville* v. *Coleman,* 103 Mo. App. 215, 77 S. W. 120; *Ladd* v. *Spencer,* 23 Or. 193, 31 Pac. 474; *Schwiesau* v. *Mahon,* 128 Cal. 114, 60 Pac. 683; *Smith* v. *City of Chicago,* 214 Ill. 155, 73 N. E. 346; *Buckley* v. *City of Tacoma,* 9 Wash. 256, 37 Pac. 441.) No plans or specifications whatever had been prepared prior to the creation of the district.    The only information given to the owners was that which could be derived from the resolutions themselves.    If the information thus given should be held sufficient under the law to validate the resolutions, then the city authorities should be held, with reasonable strictness, to the observance of the rule against material changes or departures in plans and in the nature of the work.    Otherwise, owners would ofttimes be left helpless.

Improvements made must correspond substantially with those set forth in the resolution of intention, and no material change can be made. In the instant case material changes have been made. (*Mansur* v. *Polson,* 45 Mont. 594, 125 Pac. 1002; *McBean* v. *Redick,* 96 Cal. 191, 31 Pac. 7; *Mason* v. *City of Sioux Falls,* 2 S. D. 240, 39 Am. St. Rep. 802, 805, 51 N. W. 774; *Piedmont* v. *Allman,* 136 Cal. 88, 68 Pac. 493; *Partridge* v. *Lucas,* 99 Cal. 519, 33 Pac. 1082; *La Franchi* v. *City of Seattle,* 78 Wash. 158, 138 Pac. 659; *Jones* v. *Barber A. P. Co.,* 174 Mo. 393, 160 S. W. 279; *San Jose Co.* v. *Auzerais,* 106 Cal. 498, 39 Pac. 859.)

Each kind of improvement specified in statute constitutes a class or a specific and distinct improvement. Any or many or all may be included in one resolution, but any intended to be done must be included. (*Piedmont Paving Co.* v. *Allman,* 136 Cal. 88, 68 Pac. 493; *Partridge* v. *Lucas,* 99 Cal. 519, 33 Pac. 1082; *Himmelmann* v. *Satterlee,* 50 Cal. 68; *Beaudry* v. *Valdez,* 32 Cal. 270; *Donnelly* v. *Howard,* 60 Cal. 291; *Mason* v. *City of Sioux Falls,* 2 S. D. 240, 39 Am. St. Rep. 802, 805, 51 N. W. 774.) In the instant case drainage sewers and parkings were not mentioned in resolutions. Where streets are referred to in the resolutions, the words mean entire width of street.

The result and benefit must bear a just proportion to the burden imposed. (*City of Butte* v. *School District No. 1,* 29 Mont. 336, 74 Pac. 869; *Stadler* v. *City of Helena,* 46 Mont. 128, 127 Pac. 454; 25 Ruling Case Law, "Special or Local Assessments," sec. 56, p. 138; *City of Detroit* v. *Chapin,* 112 Mich. 588, 42 L. R. A. 638, 71 N. W. 149; *Chicago* v. *Blair,* 149 Ill. 310, 24 L. R. A. 412, 36 N. W. 829; *Power* v. *City of Helena,* 43 Mont. 336, 36 L. R. A. (n. s.) 39, 116 Pac. 415.) They may be the subject of judicial inquiry, and determination of council not entirely conclusive. (*Beck* v. *Holland,* 29 Mont. 234, 74 Pac. 410.) The value of the property in the district, and, in particular, the property of the plaintiffs, will not be benefited, or, if benefited, it will not be in excess of twenty-

five per cent of the costs of the improvements. There is in the case as presented no dispute as to this. Therefore, there is a loss and damage to the plaintiffs to the extent of seventy-five per cent or more of the cost of the improvements. We contend that there is a right to a judicial hearing on the question of benefits and costs and to prevent the confiscation of property.

The lots excluded from the district will receive benefits from the improvements of the same nature as will the lots included. Their exclusion was illegal. (*Beck* v. *Holland*, 29 Mont. 234, 74 Pac. 410.)

The contract price is in excess of estimate. (*City of Chehalis* v. *Cory*, 54 Wash. 190, 102 Pac. 1027, 104 Pac. 768.)

The warrants will be issued at less than par if the contract stands. The members of the city council understood, at the time they passed upon the bids and accepted the bid of Mc-Hugh, that the last-mentioned bid, as well as the other bids, was based upon an assumed depreciation or discount of ten per cent or more of the face of the district warrants and bonds to be issued as compensation for the work, and that the amount of the various bids was inflated by a corresponding percentage; so that the district in reality would not get par for such bonds or warrants, although in appearance they might be issued at par because of the inflation of the amount of the bid. In connection with this, reference is made to the provision of section 26 prescribing that bonds or warrants when sold shall not be sold for less than par, and the provision of said section that warrants or bonds when issued in payment of work done must not be issued at less than face. Our point is that the legislative policy is clearly declared by these provisions, and they cannot be evaded by indirection.

## Opinion—PER CURIAM.

Action was brought to procure an injunction restraining defendants from entering into a contract with one Frank J. Mc-Hugh for paving streets within improvement district No. 125

within the city of Helena. Upon filing complaint, application was made for a temporary injunction, which was granted. Defendants have appealed from the order granting the temporary injunction.

On the second day of March, 1920, the council of the city [1] of Helena passed a resolution of intention to create the improvement district; the portions of the resolution of importance to the issues here involved being as follows: "That it is the intention of the city council of the City of Helena to create a special improvement district, to be known and designated as special improvement district No. 125, for the purpose of paving with reinforced concrete pavement, with the necessary excavations, cutting, filling, grading, curbing, and incidental work therewith and therefor. * * * The general character of the improvements to be made in said district is to pave the above named streets with reinforced concrete paving, six inches thick, together with the necessary excavating, cutting, filling, grading, curbing, and incidental work therewith and therefor, under specifications to be adopted by the city council of the City of Helena. * * * That the approximate estimate of costs of said improvements, including the clerical work, engineering, and supervision, is the sum of $340,000."

The streets within the improvement district vary in width from thirty-one to forty-one feet. There are parking and curbing on these streets, which have heretofore been installed under proceedings in other special improvement districts at the expense of the property owners. There is nothing in the resolution of intention to install storm sewers, extend the parking, or to completely tear out the old curbing and install new curbing. Subsequently the district was created, advertisement for bids for the construction of proposed improvement was made, and the bid of Frank J. McHugh was accepted at the sum of $349,543.34. The plans and specifications upon which the bids were made involved the construction of storm sewers in the streets covered by the pavement, pavement of the streets to the width of twenty-five feet, the tearing out of the

old curbing in its entirety, and the installation of new curbing and extension of the parking on each side of the proposed pavement from the line of the present curbing to the line of the proposed new curbing. Under the proposed contract the contractor will be paid by district warrants. John D. McLeod and John Dryburgh, two of the city commissioners, testified relative to the value of the warrants as reflected in the price for the work. Mr. McLeod testified that, in connection with the consideration of the bids and as to whether or not they were reasonably fair in amount, he considered the depreciated value of the warrants, and that he considered such value on the basis of ten per cent discount and awarded the contract on that basis. Mr. Dryburgh testified that he had reason to believe that the warrants would be disposed of by the contractor at less than par, and that if he had known that these warrants were worth cash he would not have been disposed to accept the offered bids as reasonable, and that the council certainly would have gotten a better bid if the warrants could have been sold at par. One John Tripp also testified that he was a bidder for the contract, and that in making his bid he did it on the basis that the warrants would be worth only ninety cents on the dollar. This constituted all the testimony on this feature of the case.

These facts present two questions for our determination the decision of which will dispose of the case: (1) In letting the contract, was there a substantial departure from the improvements set forth in the resolution of intention? (2) Is it permissible for the city to enter into a contract whereby payment for services to be rendered shall be made by warrants at a depreciated valuation? Other reasons were urged in support of plaintiffs' contention that the making of the contract should be enjoined, but it will be unnecessary to consider such other contentions.

In this case no question as to jurisdiction arises, there being no contention made respecting the legality of the creation of the paving district. In fact, it is conceded that the district

was legally created; but the proceedings subsequent to the organization of the district are the subject of attack, primarily the McHugh contract, which is made the basis of this decision.

The record clearly discloses that the plans and specifications for the paving, and proposed contract with Frank J. McHugh for the execution of the work, departed materially from the resolution of intention and that creating the district. The resolution of intention gave no indication that there would be a reduction in the width of the paving of the streets from the existing street widths between present curbs, or that new parking or parking extension was in contemplation, or that there would be a destruction or replacement of street curbing or new curbing, or that the installation of storm sewers was a part of the proposed improvements. However, it is contended by counsel for the defendants that all such changes and additions were legally warranted by virtue of the use of the words "incidental work" contained in the resolution of intention, and that the judgment and discretion vested in the city council in dealing with the subject for the best interest and advantage of the city authorizes the inclusion of such additional improvements.

Section 3, Chapter 89, of the Laws of 1913, as amended [2] by section 2 of Chapter 142, Laws of 1915, provides in part as follows: "Before creating any special improvement district, for the purpose of making any of the improvements, or acquiring any private property for any purpose authorized by this Act, the city council shall pass a resolution of intention so to do, which resolution shall designate the number of such district, describe the boundaries thereof, and state therein, *the general character of the improvement or improvements* which are to be made, and an approximate estimate of the cost thereof." It would require a very strained construction of language to hold that "incidental work" to paving, by implication, includes the several subjects embraced in the contract, each of which constitutes a class or a distinct city

improvement.   (See Chapter 89, Laws 1913, as amended by Chapter 142 of the Laws of 1915.)

That "incidental work" is not a sufficient description of "the general character of the improvement or improvements" in the resolution of intention is manifest.   From the resolution of intention and notice given to the taxpayers affected in connection with the creation of improvement district No. 125, no one can reasonably be held to have been advised by the general designation of paving and "incidental work" that any improvement other than the paving of the streets was designed or intended, for within the district large portions of territory have already been included in parking, curbing, and sewer districts.

Pertinent to the case before us, it was well stated by Mr. Chief Justice Brantly, in his dissenting opinion in the case of *Mansur* v. *City of Polson,* 45 Mont. 596, 125 Pac. 1002, as follows: "The term 'character,'" as used in the statute, "is perhaps the most general that could have been employed.   Even so, it must be assigned such a meaning as will effectuate the purpose had in view, *viz.,* that the improvement be so described by a statement of the dimensions, materials, *etc.,* that the lot owner may determine whether he will acquiesce, and thus consent, or appear at the appointed time and seek to arrest further proceedings.   He ought not to be compelled to suffer inconvenience incident to leaving his business to seek, and make an inquiry of, members of the council or of the officer or officers who will have charge of the contemplated improvement.   It is entirely possible that in a given case such inquiry would be futile, because definite information could not be obtained from any one of these officers.   Indeed, this was the case here; for the record shows that the city engineer did not submit an estimate of the cost of the improvements or prepare plans and specifications until after the time for making objections had passed."

It is the established rule of law that the city council, in the resolution of intention, must describe the character and

nature of the improvements, with sufficient particularity in order that the taxpayers affected may be fully advised, and the improvements to be made must correspond substantially with those set forth in the resolution of intention and no material change or departure therefrom can be made. (*Mansur* v. *City of Polson,* 45 Mont. 585, 125 Pac. 1002; *Clay* v. *City of Grand Rapids,* 60 Mich. 451, 27 N. W. 596; *Peck* v. *City of Grand Rapids,* 125 Mich. 416, 84 N. W. 614; *McBean* v. *Redick,* 96 Cal. 191, 31 Pac. 7; *Mason* v. *City of Sioux Falls,* 2 S. D. 640, 39 Am. St. Rep. 802, 805, 51 N. W. 770; *Piedmont* v. *Allman,* 136 Cal. 88, 68 Pac. 493; *Partridge* v. *Lucas,* 99 Cal. 519, 33 Pac. 1082; *La Franchi* v. *City of Seattle,* 78 Wash. 158, 138 Pac. 659; *Jones* v. *Barber A. P. Co.,* 174 Mo. 393, 160 S. W. 279; *San Jose Co.* v. *Auzerais,* 106 Cal. 498, 39 Pac. 859; *Pacific Paving Co.* v. *Verso,* 12 Cal. App. 362, 107 Pac. 590; *Bay Rock Co.* v. *Bell,* 133 Cal. 150, 65 Pac. 299; *Cass* v. *People ex rel. Kochersperger,* 166 Ill. 126, 46 N. E. 729; *People ex rel. Kochersperger* v. *Hurford,* 167 Ill. 226, 47 N. E. 368; *Sanger* v. *City of Chicago,* 169 Ill. 286, 48 N. E. 309; *Lambert* v. *Cummings,* 2 Cal. App. 642, 84 Pac. 266; *Fay* v. *Reed,* 128 Cal. 357, 60 Pac. 927; *City of Geneseo* v. *Brown,* 250 Ill. 165, 95 N. E. 172; *City of Kirksville* v. *Coleman,* 103 Mo. App. 215, 77 S. W. 120; *Ladd* v. *Spencer,* 23 Or. 193, 31 Pac. 474; *Schwiesau* v. *Mahon,* 128 Cal. 114, 60 Pac. 683; *Smith* v. *City of Chicago,* 214 Ill. 155, 73 N. E. 346; *Buckley* v. *City of Tacoma,* 9 Wash. 256, 37 Pac. 441.)

"These proceedings have for their ultimate purpose the subjecting of the property within the district to taxation to bear the cost of the improvements. They are *in invitum,* and in recognition of these facts the legislature has provided a complete, but direct, plan of procedure designed to protect property from confiscation and at the same time permit beneficial improvements to be made." (*Johnson* v. *City of Hardin,* 55 Mont. 574, 179 Pac. 824; see, also, *Hinzeman* v. *City of Deer Lodge,* 58 Mont. 369, 193 Pac. 395.)

As is well stated by Mr. Chief Justice Campbell in *Clay* v. *City of Grand Rapids, supra*: "If a city council can do one thing and call it something else, so as to confound roads with sewers, and the repair of one with the building of the other, there is no safety to citizens against the grossest usurpations and injustices."

Any one or all of the several improvements contemplated may be included in the resolution of intention, but each separate character of improvement must be embraced by specific mention and at least a general description. (Sec. 2, Chap. 142, p. 343, Laws 1915; *Piedmont Paving Co.* v. *Allman, supra; Partridge* v. *Lucas, supra; Himmelmann* v. *Satterlee,* 50 Cal. 68; *Beaudry* v. *Valdez,* 32 Cal. 270; *Donnelly* v. *Howard,* 60 Cal. 291; *Mason* v. *City of Sioux Falls, supra.*)

Ordinarily the courts will not interfere with the judgment and discretion vested in the city council in the making of such street improvements, where it acts within jurisdiction and the resolution of intention and notice sufficiently describe the work and improvements contemplated; but where the improvements about to be made are essentially different from those authorized by the resolution, and the cost of the same is materially increased, the courts will interfere, although as regards the work to be done a substantial compliance with the resolution is all that is necessary. (Hamilton on Law of Special Assessments, secs. 391, 392; *Mansur* v. *City of Polson, supra.*)

Section 26 of the Act (Laws 1913, Chap. 89, p. 411) declares: "Whether provided in the call for proposals or not, [3] all warrants let under the provisions of this Act shall be payable in bonds or warrants issued under the provisions hereof, and the city council may provide by contract with the person, persons or corporation doing the work or making the improvement for the payment of which such warrants or bonds are issued, to deliver the said warrants or bonds in installments as the work progresses, or upon the entire completion thereof:

Provided, however, that no warrants or bonds must be delivered to such contractor or contractors in excess of the amount of the work actually done at the time of the delivery, nor shall the total amount issued be in excess of the total cost and expense of the said improvements, and no warrants or bonds shall be delivered or received in payment of a less sum than its face value. And when it becomes necessary to pay for private property taken for the opening, widening or extending of any street, avenue or alley, or to pay any amount awarded or recovered on account of damages to any property caused by the making of any improvements in money, in cases where the person whose property is so taken or damaged refuses to receive his pay in warrants or bonds, then the council shall have the power, under such regulations as it may prescribe, to sell such bonds or warrants for not less than par, and devote the moneys derived therefrom to the payment of the damages assessed or agreed upon for such property or the damages thereto." This provision is crudely and awkwardly expressed. It requires no argument, however, to sustain the proposition that the fundamental idea in the mind of the legislature in enacting it was that the city council should not have power under any circumstances, directly or indirectly, to issue bonds or warrants of the district at a discount, but, on the contrary, that the price at which they should be issued and delivered for any work should be measured by the actual cost of it in cash. This is made clear by the expressions found in the proviso; *i. e.*: "No warrants or bonds must be delivered to such contractor or contractors in excess of the amount of the work actually done at the time of the delivery, nor shall the total amount issued be in excess of the total cost and expense of the said improvements," and "no warrants or bonds shall be delivered or received in payment of a less sum than its face value."

If we keep in mind the fact that section 25, as amended (Laws 1915, p. 340), expressly provides that the rate of interest upon the bonds or warrants of the district shall not exceed

six per cent per annum, it becomes manifest that the legislature intended to prohibit the council from paying for any work in bonds or warrants which cannot, at the time of the delivery, be sold upon the market for their face value. In thus limiting the rate of interest to six per cent, the legislature evidently entertained the idea that the condition of the market for bonds or warrants of the description under consideration would sometimes be such that there would be no sale for them, except at a discount, and therefore that while this condition should exist, cities should not be allowed to install improvements of any kind, the purpose being to prevent extravagance and waste. That this is the correct view is further emphasized by the provision in the latter part of section 26, *supra,* allowing the council the alternative of paying damages for property taken or damaged in making any improvement by delivering bonds or warrants of the district to the owner of the property or, in case he refuses to accept them, to sell them in the market for not less than par and pay him in cash.

Counsel for city insists that inasmuch as the proposed contract will call for the payment of the price of the improvement in bonds or warrants at their face value, this amounts to a strict compliance with the requirement of the statute. In other words, he says that the statute contemplates that bonds or warrants of any improvement district will, at times, be worth less in the market than their face value, and therefore that, inasmuch as the contractor proposes to take the bonds or warrants at their face value for the work done, though in making out his bid he made an allowance for a discount of ten per cent, the statute will not, in fact, be violated. It is clear, however, that it will be as much a violation of the statute for the city council to contract to pay $100 in bonds or warrants for work which costs only $90, as it is for the council to pay $110 for work that costs only $100. Here the proposed price for paving the streets and doing the incidental work was fixed at $349,543.34. This was arrived at by the

contractor by adding to the actual cost ten per cent because the warrants he expected to receive would, in view of the condition of the market, sell for only ninety cents on the dollar. The council intended to let the contract, fully understanding the basis upon which the contractor made his calculation. Any way the proposed contract may be viewed, the result will be an agreement by the council to issue and deliver the bonds or warrants of the district at a discount. It amounts to an agreement to do indirectly that which the council is expressly prohibited from doing directly. Therefore there will be a clear violation of the statute, and the second question, stated *supra,* must be answered in the negative.

For the reasons stated, a temporary injunction was properly issued by the trial court, enjoining and restraining the defendants from entering into the proposed contract with McHugh, and the order is affirmed, though modified to conform to this opinion.