No. 83-63

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

JEFFERY STEVENS, et al,

        Plaintiffs and Appellants,

  -vs-

CITY OF MISSOULA, et al.,

        Defendants and Respondents.

---

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        Deirdre Boggs, Missoula, Montana (argued)

    For Respondents:

        Mae Nan Ellingson, Deputy City Atty., Missoula,
Montana (argued)
Milodragovich, Dale & Dye, Missoula, Montana

---

Submitted:  June 10, 1983

Decided:  August 4, 1983

Filed:  AUG 4 1983

*Ethel M. Harrison*

———————————————————
             Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

This is an appeal from an order of the Fourth Judicial District Court, Missoula County, Montana, wherein injunctive and declatory relief was denied to plaintiffs who challenged the validity of Special Improvement District No. 470 (SID 470).

SID 470 was created by the City of Missoula, acting through its City Council, to expand off-street parking in downtown Missoula. SID 470 evolved from parking studies and plans developed by the Missoula Parking Commission and evaluated by the Missoula Redevelopment Agency. Plaintiffs own properties which lie within the boundaries of SID 470 and are subject to special assessment levies for the parking facilities to be constructed.

On February 2, 1981 the Missoula Parking Commission presented a proposed parking plan to the Missoula City Council during its regular meeting. The plan included two proposals for downtown, off-street parking improvements. The first proposal, sometimes referred to as alternative or phase one, called for the addition of 223 parking spaces on three separate surface lots. Alternative or phase two provided for 113 parking spaces on two surface lots and a 400-space parking garage on a third site. Both proposals entailed acquisition of the same parcels of land. Financing for the improvements included special assessment levies within a special improvement district, the suggested area for which was smaller than, and completely enveloped by, a 500-acre Urban Renewal District created in 1978. Financing also included revenues from parking facilities, a pledge of tax increment money from the Missoula Redevelopment Agency, which administers the Urban Renewal District, and possibly a "matching funds" grant from the federal Economic Development

2

Administration (EDA). Alternative two was presented as being contingent on a grant of monies from the EDA. It was also the alternative preferred by various city officials in later discussions and meetings with property owners, including some of the instant plaintiffs.

At that same meeting, the Missoula City Council passed Resolution No. 4107, entitled "A Resolution of Intention to Create Special Improvement District Number 470 for the Purpose of Providing Off-Street Parking Improvements." The resolution essentially adopted the proposals offered by the Parking Commission.

Pursuant to section 7-12-4104, MCA, the resolution contained a legal description of the area to be included in the special improvement district (Section II) and an explanation of the general character of the improvements, stated in the alternative (Section III).

Sections IV and V provided as follows:

### SECTION IV

"Approximate Estimated Cost of Improvement. That the approximate estimated cost to be assessed against property within District Number 470 for making the off-street parking improvements described in Section III is as follows:

> 1. $1,386,000.00, such amount to pay for all improvements enumerated in alternative number 1; or

> 2. $1,900,000.00 for alternative number 2, of this amount $1,300,000.00 shall be used for the acquisition of two surface lots and installation of 113 parking spaces and $600,000.00 shall be used as matching funds for an EDA Grant of $1,300,000.00 to construct the parking garage.

### SECTION V

"Determination of Alternative to be Adopted and Cost to be Assessed. In no event shall the costs to be assessed within Special Improvement District Number 470 exceed $1,900,000.00. In the event the City of Missoula's EDA Grant application to partially fund the construction of a parking garage is denied, the City will pursue alternative Number 1 at a cost of $1,386,000.00 to be assessed pursuant to the provisions of this Resolution."

3

Additionally, section VII included a finding by the City Council that the parking improvements are "of more than local ordinary benefit" as they would specially benefit each lot or parcel located within the contemplated boundaries of SID 470.

All but two of the instant plaintiffs filed written protests against the proposed district. Many spoke in opposition at the March 2, 1981 public hearing. Nevertheless, on March 16, 1981 the City Council adopted Resolution No. 4123, creating SID 470. Again, the general character of the improvements to be made was framed in the alternative.

On August 23, 1982 plaintiffs filed suit against the above-named defendants, respondents herein, alleging, inter alia: (1) they were denied proper notice of the proposal and its cost because the resolution of intent for SID 470 was misleading in that it set forth the number of proposed parking spaces and the costs in the alternative; (2) benefits, if any, to be derived from provision of additional metered parking spaces were of a general government nature, rather than any special benefit to property within the boundaries of SID 470 and (3) the defendants arbitrarily and mistakenly included various properties within the proposed SID boundaries that cannot be specially benefited thereby and arbitrarily and mistakenly excluded other properties that may be specially benefited thereby.

The parties stipulated that a preliminary injunction would not be necessary and that the proceeding should be expedited. The matter went to trial on September 20, 1982. Several plaintiffs and various persons involved with the development or implementation of SID 470, testified.

Final judgment, together with an opinion and order denying plaintiffs all relief, was entered October 12, 1982.

4

The trial court denied plaintiffs' motion for reconsideration or new trial by opinion and amended order, and this appeal followed.

We affirm.

Three issues are presented for review:

1. Whether Resolutions No. 4107 and No. 4123 provided adequate notice of the nature and cost of the actual improvements to be made in SID 470?

2. Whether the District Court properly upheld the City Council's determination as to what properties would be specially benefited by SID 470?

3. Whether plaintiffs' suit filed seventeen months after creation of SID 470 was subject to bar under the equitable doctrine of laches?

Plaintiffs contend that, because of their alternative structure, Resolutions No. 4107 and 4123 were unclear and ambiguous and failed to provide sufficient notice of the nature and cost of the improvements. This contention lacks merit.

The primary purpose of a resolution of intention is to apprise property owners of the cost and nature of a proposed improvement so as to allow the property owner to determine whether he will acquiesce in or protest the proposition. Evans v. City of Helena (1921), 60 Mont. 577, 589, 199 P. 445, 447. The resolutions at issue fulfill that purpose. Testimony from plaintiffs confirms that they fully understood the nature of the improvement options. Nor were they misled by the alternative form of the SID.

Plaintiffs being fully informed of the SID proposals, the argument against alternative descriptions becomes only technical. We conclude that section 7-12-4104, MCA, does not preclude use of the alternative form. Section 7-12-4104, MCA, provides:

5

"Resolution of intention to create special improvement district. (1) Before creating any special improvement district for the purpose of making any of the improvements or acquiring any private property for any purpose authorized by this part, the city council shall pass a resolution of intention to do so,

"(2) The resolution shall designate the number of such district, describe the boundaries thereof, and state therein the general character of the improvement or improvements which are to be made and an approximate estimate of the cost thereof. When any improvement is to be made in paving, the city or town council may in describing the general character of the same describe several kinds of paving."

The 1972 Montana Constitution specifically provides that the powers of incorporated cities shall be liberally construed. We recognized that mandate in Tipco Co-op, Inc. v. City of Billings (1982), _____ Mont. _____, 642 P.2d 1074, 39 St.Rep. 600, which involved the powers of a home rule municipality. A local government with general powers is entitled to the same liberal construction.

The fact that the statute expressly provides for use of alternatives for different paving materials does not mean that paving materials are the only proposals that may be proposed in the alternative. The rule of negative implication should not apply to language which may clearly comprehend many different instances, some of which are mentioned by way of example. Johnson v. General Motors Corp. (1976), 199 Kan. 720, 433 P.2d 585, 589.

Plaintiffs also challenge the City Council's determination of special benefit and creation of district boundaries. The well established rule is that the City's judgment is conclusive absent proof of fraud or mistakes which preclude the exercise of sound judgment. Schumacher v. City of Bozeman (1977), 174 Mont. 519, 526, 571 P.2d 1135, 1139. Neither this Court nor the trial court should substitute its judgment for a rational determination of the City.

6

Boundary lines should be drawn in such a way that the improvement brings a benefit to the included properties and that the benefit is substantially more intense than that which is realized by the properties outside of the district boundaries. 2 Antieau, Municipal Corporation Law, §14.24, p. 14-46. The fact that outside property derives some general benefit should not affect the special benefit afforded the district properties. Moreover, since properties within the district will bear the cost of the improvements in proportion to the special benefit received, it would be very difficult to say that borderline properties have been unfairly burdened by their inclusion in the District. Thus greater scrutiny should not be required of such SIDs though they may be extended in nature.

Since plaintiffs' case is disposed of on its merits, it is unnecessary to reach the laches issue.

The judgment of the District Court is affirmed.

Justice

We concur:

Chief Justice

Justices

7