FILED

March 26 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 08-0318

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 93

BUD-KAL, a partnership, et al.,

   Plaintiffs and Appellants,

  v.

CITY OF KALISPELL, et al.; the DOWNTOWN BUSINESS
IMPROVEMENT DISTRICT, et al.; and THE FLATHEAD
COUNTY TREASURER,

   Defendants and Appellees.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eleventh Judicial District, In and For the County of Flathead, Cause No. DV 05-149C Honorable Stewart E. Stadler, Presiding Judge |

COUNSEL OF RECORD:

   For Appellants:

   James C. Bartlett; Attorney at Law, Kalispell, Montana

   For Appellees:

   Angela K. Jacobs, Bryce R. Floch; Hammer, Hewitt, Jacobs & Floch,
   PLLC, Kalispell, Montana (for Appellees City of Kalispell, et al.)

   Diane Conradi, Law Office of Diane Conradi, P.C., Whitefish, Montana
   (for Appellees the Downtown Business Improvement District, et al.)

      Submitted on Briefs: February 19, 2009

          Decided: March 26, 2009

Filed:

   _____
        Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     This is an appeal from the District Court's June 12, 2008, Order and Rationale on Cross-Motions for Summary Judgment, granting summary judgment in favor of the City of Kalispell and the other defendants and denying the motion for summary judgment by Bud-Kal and the other plaintiffs.  We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2     This action arose from the creation of a downtown business improvement district (BID) in the City of Kalispell in 2003.  Creation of a BID is exclusively a statutory process set out in §§ 7-12-1101 through -1151, MCA.  A BID can only be created by action of the local governing body after public notice and the opportunity for affected property owners to file protests.  These statutes governing the powers of a city must be liberally construed.  *Stevens v. City of Missoula*, 205 Mont. 274, 280, 667 P.2d 440, 443-44 (1983).

¶3     The BID process begins when the governing body, in this case the City of Kalispell, receives petition signatures requesting creation of a district or expansion of an existing one.  The petitions must be signed by the owners of more than 60% of the property in the area that the organizers propose to include in the district.  Section 7-12-1111(1), MCA.  When petitions are filed, the governing body must begin the process to create a BID. Section 7-12-1111(1), MCA. The governing body's first step after receiving a sufficient number of petitions is to pass a resolution of intent to create the BID, and to designate its boundaries.  Section 7-12-1112(1), MCA.

2

¶4    The governing body must give public notice of its resolution of intent by publication and specific notice by mail to every real property owner within the proposed district. Section 7-12-1112(2), MCA. The notice must describe the general purposes of the BID and the time and place where the governing body will hear and pass upon any protests to the creation or expansion of the district. The notice must refer to the description of the boundaries of the proposed BID found in the resolution of intent. Section 7-12-1112(3), MCA. Any real property owner liable to be assessed may file a written protest with the governing body. Section 7-12-1113(1), MCA.

¶5    The governing body must evaluate any protests in a two step process. First, the governing body must decide whether the creation or expansion of the district can proceed. By law the governing body may not take any further action to create the BID if protests are received from:

> (a) owners of property within the proposed district or area of a proposed expansion having a taxable valuation, when aggregated, representing not less than 50% of the total taxable valuation of property within the district or within the area of a proposed expansion;
> (b) not less than 50% of the owners of property within the district or area of a proposed expansion; or
> (c) owners of property within the proposed district or area of a proposed expansion having projected assessments, when aggregated, representing not less than 50% of the total projected assessments for property within the district or within the area of proposed expansion.

Section 7-12-1114(3), MCA. If there are sufficient protests to satisfy one of the subsections of § 7-12-1114(3), MCA, then the process must stop regardless of the substance of the protests. If not, then the governing body must then hear and pass upon the substance of all protests. Section 7-12-1114(1), MCA.

3

¶6 When the protests are resolved the governing body "has jurisdiction to order the creation" of a BID, which it does by passing a resolution creating the BID "in accordance with the resolution of intention." Section 7-12-1115, MCA. After creating the district, the governing body appoints a board of directors, § 7-12-1121, MCA, to carry out the functions of the district, § 7-12-1131, MCA. The board must adopt and submit a work plan, § 7-12-1132, MCA, and an annual budget and method of levying an assessment, § 7-12-1133, MCA. The work plan, budget and assessment method must be approved by the governing body after public notice and a hearing on any objections. Section 7-12-1132(3), MCA.

¶7 This statutory process was invoked in 2002 when property owners in downtown Kalispell solicited support and petition signatures from other property owners to request that the City of Kalispell create a downtown BID. The BID promoters sent mailings and made visits to property owners in the proposed district. In the spring of 2003, the BID promoters delivered their signed petitions and a map of the proposed BID to the Kalispell City Attorney. The City Attorney reviewed the petitions and map, and determined that the petitions had been signed by owners of more than 60% of the property that the promoters proposed for inclusion within the BID.

¶8 The City Attorney reported the petition results to the Kalispell City Council, and on May 19, 2003, the Council passed a resolution of intent to create the BID. The boundaries of the BID were indicated on a map attached to and incorporated in the City's resolution. The City published notice of the resolution of intent and mailed notice to all owners of real property located in the proposed BID. The notice referenced the City's

4

resolution of intent, described the general purposes of the BID, stated that a map of the BID could be obtained from the City Clerk, set the time for filing written protests, and set the time and place where protests would be heard. The notice contained a written description of the boundaries of the proposed BID.

¶9 Twelve property owners filed written protests against creation of the BID. The City Attorney reviewed the protests under § 7-12-1114(3), MCA, to determine whether they were sufficient to prohibit further action by the City. He calculated that protests had not been filed by the owners of property representing 50% or more of the total taxable value of the proposed BID (§ 7-12-1114(3)(a), MCA) and that protests had not been filed by the owners of 50% or more of the area of the property within the proposed BID (§ 7-12-1114(3)(b), MCA). The City Attorney did not determine whether protests were filed by owners of property having projected aggregated assessments of 50% or more of the total projected assessments of the BID (§ 7-12-1114(3)(c), MCA) because there was no projected assessment at that point of the process.

¶10 The City Attorney reported the results of his evaluation of the protests to the City Council which proceeded to hear the substance of the protests at a public hearing on June 16, 2003. The Bud-Kal property owners appeared at the hearing and supported their protests, including their argument that they would not receive sufficient benefit from the proposed BID. The City Council determined that the substance of the protests was insufficient to bar creation of the BID and passed a resolution creating the district using the same boundaries that had appeared in the prior resolution of intent. At that time the City did not appoint a board of directors.

5

¶11 A few months later there was a second petition drive seeking to expand the area of the BID to make it more economically viable. The City, as before, received and evaluated petitions and then passed a resolution of intent to expand the district. The City provided notice and opportunity for protests but none was filed. On December 1, 2003, the City Council passed a resolution creating the expanded BID. On December 15, 2003, the City appointed a Board of Trustees for the BID, and the Board developed a proposed budget and method of assessment. The City Council gave public notice, held a hearing on the Board's proposals, and approved the plan, budget and method of assessment in a subsequent resolution on May 17, 2004.

¶12 Bud-Kal and the other plaintiffs below are property owners in the downtown Kalispell area who object to being included in the BID. On February 28, 2005, they filed suit seeking to void the BID; seeking an injunction preventing any action by the City with regard to the BID; and seeking a refund of all assessments paid. In 2006 Bud-Kal moved for summary judgment on the ground that the original petitions were defective because they did not contain a proposed assessment for the district and for each affected property owner. In an opinion dated September 5, 2006, the District Court denied Bud-Kal's motion, holding that there was no statutory requirement that the petitions contain projected assessments for the district or for individual parcels of property.

¶13 The case sat essentially dormant for over a year until the City requested a scheduling order and moved for summary judgment in December, 2007. Bud-Kal then filed a second motion for summary judgment. The parties submitted briefs and affidavits in support of their motions and on June 12, 2008, the District Court entered its Order and

6

Rationale on Cross-Motions for Summary Judgment. The District Court found that the evidence showed that there was a proposed boundary map submitted with the petitions and that there was nothing in the statutes that invalidated the petitions. The District Court found that the City followed the required statutory process for forming the BID and that the City's determination of what property was benefitted by the district was conclusive absent evidence of fraud or mistake. The court found that Bud-Kal had presented only "rhetoric" but no evidence of fraud.

¶14 The District Court granted summary judgment for the City defendants and denied summary judgment to the Bud-Kal plaintiffs. Bud-Kal appeals.

## STANDARD OF REVIEW

¶15 This Court reviews a district court's decision on summary judgment de novo, using the same standards applied by the district court under M. R. Civ. P. 56. *Smith v. B.N.S.F. Ry.*, 2008 MT 225, ¶ 10, 344 Mont. 278, 187 P.3d 639. Where, as here, there are cross motions for summary judgment and the district court is not called upon to resolve factual disputes, but only to draw conclusions of law, we review to determine whether those conclusions are correct. *Merlin Meyers Revocable Trust v. Yellowstone County*, 2002 MT 201, ¶ 12, 311 Mont. 194, 53 P.3d 1268.

## DISCUSSION

¶16 *Whether property owners were properly appraised of the area proposed for inclusion in the BID*. On appeal Bud-Kal attacks the legality of the BID primarily on the ground that the promoters' petitions presented to the City in 2003 were invalid and were insufficient to enable the City to begin the statutory process to create the district. Bud-

7

Kal contends that the City was barred from acting on the petitions because Bud-Kal could not establish from City records that each signed petition had a map of the proposed district attached to it, and could not establish that the maps circulated with the petitions all depicted the same boundaries.

¶17    The statutes that govern the BID process do not require any specific form or content for the petitions, and there are no reported cases from this Court construing the BID statutes. Section 7-12-1111(1), MCA, provides only that the governing body must begin the process to create a BID "upon receipt of a petition signed by the owners of more than 60% of the area of the property proposed in the petition to be included in the district . . . ." There is no requirement that the petitions include a map or any other specific boundary description of the proposed district. The petitions in this case incorporated by reference a "map attached hereto," and the City Attorney's affidavit[1] filed by the City below in support of its motion for summary judgment, establishes that he received the map when the petitions were delivered to him. The promoters of the BID

---

[1] In support of its motion for summary judgment below the City presented an affidavit of the Kalispell City Attorney, who had received the petitions on behalf of the City. The City Attorney attested that the signed petitions he received from the promoters each incorporated by reference a "map attached hereto" and that he received with the petitions a map depicting the boundaries of the proposed BID. On appeal, Bud-Kal argues that this affidavit was "hearsay" that must be rejected. The record below contains no hearsay objection by Bud-Kal to the City Attorney's affidavit and we will not consider the objection for the first time on appeal. *Timis v. Young*, 2001 MT 63, ¶ 8, 305 Mont. 18, 22 P.3d 112. Even if a hearsay objection had been made below, the City Attorney's affidavit described what he personally observed regarding the petitions, and was clearly not hearsay as defined in M. R. Evid. 801(c). The affidavit contained admissible evidence and was properly considered by the District Court. *State v. Smith*, 276 Mont. 434, 440-41, 916 P.2d 773, 776 (1996); *State v. Bretz*, 185 Mont. 253, 284, 605 P.2d 974, 992 (1979).

prepared a separate petition to be signed by each property owner who supported creating a district. Each petition contained a statement of support for creation of a BID and its purposes, and stated that the "boundaries of the proposed district are described on the map attached hereto and incorporated herein." This was not a process in which petitions were left in public places with hopes that property owners would sign them. The evidence showed that the promoters met personally with many property owners, and certainly with those who signed a petition of support.

¶18    One of the overriding purposes of the BID statutes is to ensure that the public has notice and an opportunity to be heard prior to final action by the governing body. In its first order on summary judgment below, the District Court found that Bud-Kal conceded that "any protestor had the right and did attend the meeting set for considering protests" and that their objections were presented to the City Council. (Order of September 5, 2006.) Bud-Kal has made no showing that any property owners, whether supporting or opposing the BID, were confused or misled by the process or that they failed to receive any required notice. Nor did Bud-Kal make any showing that any property owners changed positions to their detriment with regard to the property proposed to be included in the BID, or with regard to the presence or absence of maps with the petitions. Bud-Kal also made no showing that any change in the maps during the petition process affected the 60% sufficiency calculation in § 7-12-1111(1), MCA. In summary, there is no specific statutory requirement that the City failed to follow, and no showing of any actual prejudice as to any property owner in regard to the City's receipt of the petitions. The role of this Court is to ascertain and declare what in terms or substance is contained in a

9

statute, and not to insert what is omitted or omit what is inserted. Section 1-2-101, MCA; *McCabe Petroleum Corp. v. N Bar Ranch, LLC*, 2004 MT 73, ¶ 28, 320 Mont. 384, 87 P.3d 497. While it is evident that the City's record-keeping process is deficient, that alone is not fatal to the process in this case. We find no error.

¶19 *Whether the City Attorney properly received and evaluated the petitions and reported to the City Commission*. Bud-Kal contends that it was improper for the City Attorney to review the petitions for sufficiency and then report to the City Council. Section 7-12-1111(1), MCA, does not specify any particular city official to whom the petitions must be delivered. It was reasonable and lawful for the City Council to designate a City official, such as the City Attorney, to receive and evaluate the petitions, despite Bud-Kal's contention that only the City Council itself had the power to do so. A city council has the power to prescribe the duties of all city officers. Section 7-4-4110, MCA. The statutory duties of a city attorney include providing opinions to the city council pertaining "to the duties and the rights, liabilities, and powers of the city. . . ." Section 7-4-4604(4), MCA. The city attorney must also "perform other duties that pertain to the functions of the city council . . . ." Section 7-4-4604(5), MCA. The City Attorney was well within his statutory role when he received and evaluated the sufficiency of the petitions and then reported to the City Council. There is no statutory requirement that the petitions be handled in any other manner, and we decline to read such a requirement into the law.

¶20 *Whether the proposed boundary of the BID was improperly changed during the petition process*. Bud-Kal contends that the promoters of the BID "gerrymandered" the

10

district boundaries during the petition process and that this precluded the City from acting. According to Bud-Kal, the promoters were required to start over again and to collect new signatures any time the map changed. The flaw in Bud-Kal's argument is that the petitions do not determine the boundaries or any other specific aspect of the BID. The governing body determines what property will be benefitted and will be included in the district regardless of what may have been proposed from time to time by the promoters. It is established law that a governing body's determination of the property to be benefitted by inclusion in a district is conclusive absent proof of fraud or mistake that precludes the exercise of sound judgment. *Enger v. City of Missoula*, 2001 MT 142, ¶ 18, 306 Mont. 28, 29 P.3d 514 (decided under the statutes applicable to special improvement districts). In *Hammermeister v. Northern Montana Joint Refuse District*, 278 Mont. 464, 471, 925 P.2d 859, 863-64 (1996), this Court declined to void a refuse district where the area described in the governing body's notice of intention was larger than the area included in the final district, on the ground that there was no statutory requirement for a new notice upon change in the boundaries. There is similarly no such requirement applicable to the petition-gathering process prior to the creation of a BID.

¶21 The District Court below considered Bud-Kal's arguments and materials on this issue and concluded that it was "rhetoric" that contained no actual evidence of fraud or mistake precluding the City from exercising sound judgment. The statutes contain no requirement that new signatures be gathered any time there is a change in the BID proposal during the petition process and we decline to read one into the law. We find no reason to disturb the District Court's determination.

11

¶22 *Whether the petitions must specify a proposed annual assessment.* The District Court refused to void the BID because the petitions did not specify the amount of an annual assessment for each property owner. There is no express or implied requirement in the BID statutes that the petitions contain a projected assessment amount either for the entire BID or for each individual parcel of property. The costs of operating a BID are paid for by an assessment or tax against all property within the district. Section 7-12-1132(4), MCA.

¶23 Bud-Kal contends that § 7-12-1114(3), MCA, requires that the petitions contain projected assessments at the time signatures are gathered. That statute, quoted above, provides three alternate methods for determining whether sufficient protests have been lodged to prohibit the governing body from proceeding to create the BID. One of the three methods is based upon a determination of whether there are protests by owners of property within the proposed district representing projected assessments of not less than 50% of the total projected assessments. Clearly, this method of determining the sufficiency of protests cannot be used unless there is a proposed assessment for the entire BID and an assessment methodology in place prior to the time the protests are filed.

¶24 There is no statutory requirement that there be proposed assessment amounts announced at the time that the petition signatures are gathered. The BID statutes do not require that there be a proposed assessment until after the district has been created, a board of trustees is appointed, and the governing body approves a proposed budget and method of assessment. Sections 7-12-1132 and -1133, MCA. The statutes governing other types of districts are different and specifically require that there be an estimate of

the assessments prior to the time that protests are due. Section 7-12-2103, MCA (rural improvement districts), and § 7-12-4104, MCA (special improvement districts). Significantly, the BID statutes contain no such requirement.

¶25 The three methods in § 7-12-1114(3), MCA, for determining the sufficiency of protests are also stated in the disjunctive. The statute provides that method (a), method (b), or method (c) can be used to determine whether sufficient protests have been filed. There is nothing in the statute requiring that each of the methods be used to evaluate the sufficiency of protests to a proposed BID.

¶26 Bud-Kal also made no showing that the protests would have been successful if an assessment had been projected at the petition stage of the process. The protests fell far short of the 50% threshold under the other two methods in the statute, and there is therefore little likelihood that there would have been sufficient protests under the assessment method. Ultimately, even if the petitioners had designated a proposed assessment, it would not have been binding upon the City Council. Absent a specific requirement in the statute, we find no error.

¶27 In summary, we are persuaded, as was the District Court, that the City of Kalispell afforded due process to those involved in the BID process, and that the City complied with all express statutory requirements. The governing body's resolution of intent is the primary step that leads to the creation of a BID, not the contents of the petition. *See Buckley v. Wordal*, 262 Mont. 306, 313, 865 P.2d 240, 245 (1993)[2]. The legislature has

---

[2] *Buckley* interpreted §§ 7-12-2101, et seq., that govern the creation of rural improvement districts.

specified the process that a governing body must follow to create a BID, and it is a matter for the legislature to determine whether there should be different or additional requirements for the petitions or for any other step in the process. *Buckley*, 262 Mont. at 319, 865 P.2d at 248. Following adoption of the resolution of intent, all affected land owners received notice and an opportunity to protest. Bud-Kal does not contend otherwise. Creation of a BID is specifically controlled by statutory procedures that set out the responsibilities of the governing body at each step in the process. Bud-Kal has not established that the City of Kalispell neglected to comply with any specific requirement of law and therefore there is no ground for setting aside creation of the BID.

¶28 *Whether issues of fact precluded summary judgment below.* Bud-Kal lastly asserts on appeal that there are material questions of fact that "implicate constitutional claims" and that these issues precluded summary judgment in favor of the Downtown Business Improvement District below. The record of the District Court below contains no indication that Bud-Kal argued that genuine issues of material fact precluded the District Court from granting summary judgment to any of the opposing parties.

¶29 After the case had lain dormant for over a year, the City parties moved for summary judgment, asserting that there were no genuine issues of material fact and that they were entitled to judgment as a matter of law. Bud-Kal then filed its second motion for summary judgment, also contending that there were no genuine issues of material fact and that they were entitled to judgment as a matter of law. The District Court's order that forms the basis of Bud-Kal's appeal contains no discussion of any contention by Bud-Kal that issues of fact preclude summary judgment in favor of any of the City defendants.

14

¶30    It is well settled that this Court will not consider issues not presented to the District Court below and raised for the first time on appeal. *Timis*, ¶ 8.

¶31    The decision of the District Court is affirmed.


/S/ MIKE McGRATH

We concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE


Justice James C. Nelson, dissenting.

¶32    I respectfully dissent from the Court's decision.

¶33    All things being equal, I would likely concur in much of the Court's decision. That said, however, on the record before this Court—which I believe was the same record before the District Court—I cannot understand how any judicial review can realistically be conducted of the proceedings leading up to the creation and expansion of the BID at issue.

¶34    The entirety of the City of Kalispell's file in the record of this matter contains not one original document. The official file, which is in the record as Exhibit 3, contains nothing but photocopies of petitions—without any incorporated-by-reference map attached—and other photocopied documents. There are different maps, and there is no way to tell which map went with any given petition. Moreover, the file is incomplete.

15

Apparently, the original petitions were not maintained by the City; indeed, some of them were returned to one of the promoters of the BID and those were lost by him. We do not know that all the petitions and protests are in the file, and there is no way to verify any of this information.

¶35 City Attorney Harball's May 26, 2006 affidavit states that, although he received a map of the boundaries of the proposed BID at the time he received the petitions, none of the individual petitions had a map attached. Similarly, the City Attorney's affidavit states that he "could not determine whether the written protests were filed by owners of property within the proposed BID having projected aggregated assessments of 50% or more of the total projected assessments for property within the BID." However, he then goes on to speculate that since there were "only 12 protests," it would have been "unlikely, if not impossible," that the "50% or more" threshold would have been reached. That is not a conclusion that a reviewing public officer should have to extrapolate from missing documents. The point is that neither the City Attorney nor the City Council should have relied on less than accurate and complete petitions and protests. If the foundational documents for creating the BID were incomplete, faulty, or not capable of verification, then whatever the City Council did after that was tainted. M. R. Civ. P. 56(e) requires that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." City Attorney Harball's affidavit does not include sworn or certified copies of the petitions and protests he examined. Indeed, given what was, apparently, presented to him for review, it is doubtful that he could have sworn to or certified either.

16

¶36    Undisputedly, a complete and accurate file demonstrating that the BID was created and extended in accordance with the governing statutes does not exist. Thus, I cannot see how any reviewing court can determine conclusively that any of the statutory requirements referred to in the BID Act were, in fact, ultimately satisfied in this case.

¶37    It is not the judiciary's job to maintain complete and accurate original records supporting the creation of statutorily-authorized tax or improvement districts. Moreover, it is not the judiciary's obligation—or the city attorney's job, for that matter—to fill in the gaps where incomplete documents are presented for review. Proper recordkeeping and maintenance of public records are uniquely the obligation of the local government entity involved. *See e.g.* § 7-1-4144, MCA (requiring, with exceptions not at issue here, that all records and other written materials in the possession of a municipality be available for inspection and reproduction by any person during normal office hours); § 2-6-102, MCA (stating that citizens have a right to inspect and copy public writings and that public officers having custody of public writings are bound to give certified copies of the original documents). In this case, there was simply no way for the property owners who wished to challenge the creation and extension of the BID to mount an effective attack; the original underlying petitions as actually circulated and signed with the incorporated-by-reference maps attached were not available. Challengers could not present the District Court with certified copies of original petitions as circulated; the originals didn't exist. Instead, the property owners were simply forced to take the City Attorney's and one of the promoter's words that there were sufficient petitions and insufficient protests. Challengers could not verify this information themselves.

17

¶38  Simply put, it is inconceivable that any local government asked to create a tax or improvement district would not maintain the original petitions and protests which, under the governing statutes, comprise the foundational documents for the requested governmental action.  It follows that given the absence of an accurate and complete reviewable record in this case, we should reverse and direct the District Court to order the purported proceedings creating the BID void *ab initio*.  The BID promoters should be required to start over, and the City of Kalispell should be required to keep and maintain the original foundational documents so that those wishing to challenge the creation of the BID, and the reviewing courts, both have a complete and accurate record with which to work.

¶39  For that reason, I cannot join the Court's Opinion.  I respectfully dissent.


/S/ JAMES C. NELSON



Justice Patricia O. Cotter joins the Dissent of Justice James C. Nelson.


/S/ PATRICIA COTTER