*300 OPINION AND ORDER
¶1 American Zurich Insurance Company (Zurich) seeks a writ of supervisory control, arguing that the Thirteenth Judicial District Court is proceeding based on a mistake of law in controlling discovery with respect to matters protected by the attorney-client privilege and the work product doctrine. We accept review of the petition in this instance because the case presents a purely legal issue for which, if the District Court erred, there would be no adequate remedy on appeal. For the reasons that follow, we conclude the District Court correctly applied the law of attorney-client privilege, but incorrectly analyzed the work product doctrine. However, since the court reached the proper conclusion, supervisory control is unnecessary and we dismiss the petition.
FACTUAL AND PROCEDURAL BACKGROUND
¶2 Phillip Peters suffered a serious injury on January 18,1999, while working at Roscoe Steel & Culvert Co. (Roscoe). He later filed a workers’ compensation claim. Zurich, which insured Roscoe under Plan II of the Montana Workers’ Compensation Act, accepted liability for Peters’s claim. Zurich contracted with Employee Benefit Management Solutions (EBMS), a third-party adjuster, to provide services for Peters’s claim. EBMS employee Jim Kimmel was responsible for adjusting Peters’s claim. Kimmel stated in his deposition that he had *301 the “absolute authority” to adjust Peters’s workers’ compensation claim.
¶3 Over the course of several years, Peters and Zurich disagreed over elements of Peters’s claim, including the level of his impairment and other issues. During this time, attorney Joe Maynard of the Crowley Law Firm advised Zurich on various legal matters. Maynard prepared an opinion and evaluation letter regarding Peters’s case, dated October 7,2003 (Maynard Letter). The letter was prepared in advance of a mediation held October 10, 2003. Maynard sent the letter to Kimmel, who then wrote notes on the letter reflecting his conversation with Maynard. Without Zurich’s or Maynard’s knowledge or permission, Kimmel provided a copy of his annotated letter to Roscoe.
¶4 Although the case did not settle as a result of the 2003 mediation, the parties eventually resolved Peters’s underlying disability benefits claim. Peters filed the present action in May 2008 for unfair claims settlement practices, naming Zurich and Kimmel as defendants. On May 6, 2011, Peters served Roscoe with a Subpoena Duces Tecum requesting Roscoe’s “entire file and all documentation relating to Mr. Peters’s employment, his injury of January 18, 1999, his workers’ compensation claim regarding this injury, and any and all correspondence either written or electronic or in whatever form, with Zurich, EBMS, and the Crowley Law Firm regarding Mr. Peters.” Roscoe, represented by separate counsel, objected to the subpoena and filed an action to quash it, citing attorney-client privilege and the work product doctrine. In its July 7th order, the court denied Roscoe’s motion and ordered Roscoe to produce the Maynard Letter. The court held that the letter was not protected by attorney-client privilege because Roscoe was neither a party to the action nor had a shared legal interest with Zurich. The court similarly found the letter was not protected by the work product doctrine since Roscoe had no legal interest in the claim and was not acting as Zurich’s agent, attorney, or consultant. Zurich then filed a motion for relief from the court’s order to produce. The court denied Zurich’s motion, and Zurich petitioned this Court for a writ of supervisory control.
DISCUSSION
¶5 1. Propriety of Supervisory Control.
¶6 Pursuant to Article VII, Section 2(2) of the Montana Constitution, this Court may exercise supervisory control over other courts. The Court is justified in doing so when “urgency or emergency factors exist, making the normal appeals process inadequate, when the case involves *302 purely legal questions, and when... the other court is proceeding under a mi stake of law and is causing a gross injustice.” M. R. App. P. 14(3). The grant of a writ of supervisory control is an extraordinary remedy. Stokes v. Mont. Thirteenth Jud. Dist. Ct., 2011 MT 182, ¶ 5, 361 Mont. 279, 259 P.3d 754. “We will assume supervisory control over a district court to direct the course of litigation if the court is proceeding based on a mistake of law, which if uncorrected, would cause significant injustice for which appeal is an inadequate remedy.” Stokes, ¶ 5 (citing Simms v. Mont. Eighteenth Jud. Dist. Ct., 2003 MT 89, ¶ 18, 315 Mont. 135, 68 P.3d 678).
¶7 We find it appropriate to review Zurich’s contentions. We requested supplemental briefing and oral argument in this case because the question presented is one of first impression and raises an issue of law: whether, in a claim for workers’ compensation benefits, an attorney’s communication to its client insurer is privileged when the client voluntarily discloses the communication to the non-client employer. Normal channels of appeal would prove inadequate. We have recognized that compelled discovery of potentially-privileged material presents unique issues that, under certain circumstances, are “sufficient to invoke original jurisdiction.” Inter-Fluve v. Mont. Eighteenth Jud. Dist. Ct., 2005 MT 103, ¶ 1, 327 Mont. 14, 112 P.3d 258 (quoting Winslow v. Mont. Rail Link, Inc., 2001 MT 269, ¶ 2, 307 Mont. 269, 38 P.3d 148). If the District Court did err in ordering production of the Maynard Letter, later appeal would provide no relief for Zurich because the purportedly confidential contents of the letter would be exposed. However, while we accept review of the petition, we decline to exercise supervisory control in this case. As explained below, though the District Court erred in its analysis of the work product doctrine, its analytical error does not affect the correctness of its decision to require production of the letter. We take the opportunity to explain our reasoning in order to promote judicial efficiency and to avoid a later appeal of the issue in this case.
¶8 2. Whether Kimmel’s actions waived Zurich’s attorney-client privilege.
¶9 The attorney-client privilege protects communications between attorney and client during the course of the professional relationship.
The fundamental purpose of the attorney-client privilege is to enable the attorney to provide the best possible legal advice and encourage clients to act within the law. The privilege furthers this purpose by freeing clients from the consequences or the *303 apprehension of disclosing confidential information, thus encouraging them to be open and forthright with their attorneys.
Inter-Fluve, ¶ 22. The privilege serves to ensure attorneys freely give accurate and candid advice to their clients without the fear it later will be used against the client. Inter-Fluve, ¶ 22 (citing Palmer by Diacon v. Farmers Ins. Exch., 261 Mont. 91, 107, 861 P.2d 895, 904-05 (1993)). ¶10 While serving these underlying policy goals, the privilege must be construed narrowly because it obstructs the truth-finding process. Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1423 (3rd Cir. 1991). The privilege “protects only those disclosuresmecessary to obtain informed legal advicewvhich might not have been made absent the privilege.” Fisher v. U.S., 425 U.S. 391, 403, 96 S. Ct. 1569, 1577 (1976). The purpose is to encourage full and frank communication, not as an end in itself, but as a means to promote ‘broader public interests in the observance of law and administration of justice.” Upjohn Co. v. U.S., 449 U.S. 383, 389, 101 S. Ct. 677, 682 (1981).
¶11 As a general rule, the privilege extends only to communications between an attorney and a client. There are specific exceptions, however, which permit communications involving third parties to receive the same protection. Westinghouse, 951 F.2d at 1424. Attorney-client communications may be protected if disclosed to another party “where the parties undertake a joint effort with respect to a common legal interest.” U.S. v. BDO Seidman, LLP, 492 F.3d 806, 816 (7th Cir. 2007). Such disclosures may be privileged if communicating with the third party is “necessary for the client to obtain informed legal advice.” Westinghouse, 951 F.2d at 1424 (emphasis added). These third parties may be co-litigants, or other professionals assisting the attorney in representing the client. Westinghouse, 951 F.2d at 1424; In re Rules of Prof'l Conduct, 2000 MT 110, ¶ 60, 299 Mont. 321,2 P.3d 806 (citing U.S. v. Mass. Inst. of Tech., 129 F.3d 681, 684 (1st Cir. 1997)). The lawyer’s need to communicate with these third parties must be “appropriate, even if not vital, to the consultation.” In re Rules, ¶ 60 (citing Mass. Inst. of Tech., 129 F.3d at 684). Known variously as ‘joint defense agreements,” the ‘joint prosecution privilege,” or the “common interest doctrine,” the shared privilege generally is limited to parties involved in litigation or impending litigation, or where the third party has “a common legal interest for the purpose of rendering legal advice to the client.” Hanover Ins. Co. v. Rapo & Jensen Ins. Servs., Inc., 870 N.E.2d 1105, 1109-10 (Mass. 2007).
*304 ¶12 The intersection of workers’ compensation law and the attorney-client privilege presents a unique issue. The Montana Workers’ Compensation Act provides the employee’s exclusive remedy for workplace injury. Bylaw, the employer’s role in workers’ compensation cases is limited. With extremely narrow exceptions, the employer is statutorily immune from suit for common law injury claims. Sections 39-71-411, 413, MCA. Montana statutes require an employer to elect one of three plans for insuring workers’ compensation liability. Pertinent here is Plan II, under which the employer purchases coverage through an authorized insurance company. Section 39-71-2201, MCA. The Plan II insurer is directly and primarily liable to the employee, and must pay directly to the employee any compensation for which the employer is liable. Section 39-71-2203(3), MCA.
¶13 Moreover, the insurer’s duty to compensate the employee cannot be delegated to the employer, nor can the employer veto or influence any settlement between the insurer and the employee. Hernandez v. Nat’l Union Fire Ins. Co. of Pittsburgh, 2003 MTWCC 5, ¶ 1, 2003 MT Wrk. Comp. LEXIS 4. The rules of the Workers’ Compensation Court, promulgated after extensive participation by attorneys for claimants, insurers and employers, make clear that the employer is not to be named as a party to an action for benefits, except in cases involving the uninsured employers’ fund or involving a request for relief against an employer. Admin. R. M. 24.5.301(4). With those limited exceptions, the employer is not at risk in the action, though it retains a “duty to cooperate and assist its insurer, including any duty to assist in responding to discovery.” Admin. R. M. 24.5.301(4). It is thus improper for an insurer and an employer to collaborate on settlement of a worker’s claim for benefits. Consistent with the Workers’ Compensation Court rules, Roscoe was not named as a party in Peters’s compensation claim before that Court.
¶14 To be sure, an employer and an insurer share legal interests in the workers’ compensation arena. The employer and insurer must work together to promote safety on the job, to assist employees in prompt return to work after an injury, and to prevent fraudulent claims. Sections 39-71-107(1), 39-71-316, 39-71-613(4), 45-6-301(5), MCA. Even outside the workers’ compensation system, though, “the relationship between an insurer and insured is permeated with potential conflicts.” In re Rules, ¶ 37. As we have previously stated, the common interest in keeping litigation and premium costs down, by itself, is not sufficient to extend the privilege beyond the attorney-client relationship. In re Rules, ¶ 70.
*305 ¶15 Where two parties are engaged in a joint defensive effort against a claim, the privilege may attach (In re Rules, ¶ 72), but that is not the case here. Despite their common interests in some areas, an employer and an insurer do not share a common legal interest in the adjustment of an employee’s claim for compensation for which the insurer exclusively is liable. In evaluating and settling Peters’s benefits claim, Zurich bore direct liability to Peters. Roscoe’s role as an employer during the adjustment process was similar to that of a witness-it would be called upon to provide background information to Zurich about the employee’s duties, history and facts about the injury. See Admin. R. M. 24.5.301(4). While the employer supplies information to the insurer in its evaluation of a compensation claim, the employer is not a co-litigant and bears no liability. Indeed, the employer is not solely aligned with the insurer in an adversarial position against the employee, but shares common interests with both the insurer and the employee. The employer and employee share an interest in avoiding an insurer’s unreasonable denial of liability or termination of benefits (§§ 39-71-611, 612, MCA), and have a common interest in rehabilitation and speedy adjustment of the claim to facilitate prompt medical treatment for the employee’s injuries and hasten the employee’s return to work (§39-71-105(3), MCA).
¶16 In addition, Kimmel’s disclosure of the Maynard Letter to Roscoe was not necessary for Zurich to obtain legal advice. Roscoe had a duty to provide Zurich with information to facilitate Zurich’s evaluation of the claim, but the necessity for information only flows in one direction in this context. In light of the law barring an employer in Plan II cases from participating in the adjustment of the claim, it was not necessary or appropriate for Zurich to communicate its settlement strategy with Roscoe. Peters’s expression of interest in suing Roscoe (Dissent, ¶ 43) did not bring Roscoe’s legal interests into the adjustment of the benefits claim. To the contrary, an employer’s legal interests most likely would be at odds with those of its insurer were the employee to seek exemption from workers’ compensation exclusivity by alleging intentional acts. See §39-71-414, MCA. In any event, ‘It]he litigation looming on the horizon” was only that pending in the Workers’ Compensation Court, involving solely Zurich and Peters. FEC v. Christian Coalition, 178 F.R.D. 61, 73 (E.D. Va. 1998). As the District Court correctly concluded, Roscoe was neither a party to the action nor shared a common interest with Zurich in the adjustment of Peters’s claim.
*306 ¶17 ‘[F]or the common interest doctrine to apply, the parties must share a common legal interest, rather than a commercial or a financial interest.” ESP Stallion 1, LLC v. Luce, 2010 U.S. Dist. LEXIS 110617, *58 (D. Nev. 2010). Extension of the shared privilege to a non-party is based on the non-party’s legal interest in the matter, not on the amorphous concept of its “expertise” or knowledge of matters involved in the case. See, e.g., In re Grand Jury Subpoenas, 902 F.2d 244, 249 (4th Cir. 1990) (common interest doctrine applied to related corporate entities pursuing a joint claim). The common interest doctrine “does not extend [to] communications about a joint business strategy that happens to include a concern about litigation.’”FSP Stallion 1, at **58-59 (quoting Walsh v. Northrop Grumman Corp., 165 F.R.D. 16, 18 (E.D.N.Y. 1996)).
¶18 In FSP Stallion 1, the common interest doctrine was invoked by a number of defendants sued for violation of federal and state securities laws. The plaintiffs claimed the defendants-a group of individuals and their business entities-had conspired to develop a scheme to fraudulently induce investors to purchase tenant-in-common interests at an inflated price. They sought production of documents relating to the drafting and preparation of the Private Placement Memorandum (PPM) used to solicit investors, which the defendants claimed were protected by a shared privilege since all had participated together in preparing the PPM. FSP Stallion 1, at **14-15. The court refused to apply the privilege to the documents in question, ruling that Tt]he common interest doctrine does not extend to communications about a joint business or financial transaction, merely because the parties share an interest in seeing the transaction is legally appropriate.” Additionally, the court noted, “[a] desire to comply with applicable laws and to avoid litigation does not transform their common interest and enterprise into a legal, as opposed to a commercial, matter.” FSP Stallion 1, at *67.
¶19 Like the defendants in FSP Stallion 1, although Roscoe and Zurich may have shared a desire to avoid litigation and to comply with the workers’ compensation laws, Roscoe did not share a common legal interest in the adjustment of Peters’s claim and thus was not protected by Zurich’s privilege with its counsel.
¶20 Finally, we examine whether Zurich waived its attorney-client privilege in transmitting the letter to Roscoe. The attorney-client privilege is held by the client and may be waived by voluntary disclosure. M. R. Evid. 503; State v. Tadewalt, 2010 MT 177, ¶ 17, 357 Mont. 208, 237 P.3d 1273. ‘Voluntary disclosure to a third party of *307 purportedly privileged communications has long been considered inconsistent with an assertion of the privilege.” Westinghouse, 951 F.2d at 1424. Disclosure to third parties waives attorney-client privilege unless disclosure is necessary for the client to obtain informed legal advice. Westinghouse, 951 F.2d at 1425. We already have concluded the disclosure was unnecessary for Zurich to obtain legal services. However, Zurich contends Kimmel was not authorized to waive the privilege.
¶21 Zurich cites Inter-Fluve for the principle that a corporate attorney-client privilege is normally only exercised and waived by its officers and directors. ¶ 33. Since Kimmel was merely a claims adjuster, Zurich contends he had no such authority. We disagree. Section 39-71-107(2), MCA, details the extensive authority a Montana claims adjuster must have when examining and managing workers’ compensation claims. Consistent with the requirements of state law, Kimmel acknowledged he had “absolute authority” over management of Peters’s claim. In Inter-Fluve, we quoted the United States Supreme Court’s analysis of the attorney-client privilege in a corporate context, stating all corporate action “must necessarily be undertaken by individuals empowered to act on behalf of the corporation.” ¶ 33 (quoting Commodity Futures Trading Comm’n v. Weintraub, 471 U.S. 343, 348, 105 S. Ct. 1986, 1991 (1985)). Not only was Kimmel empowered to act on behalf of the corporation in this instance, Montana law requires his authority in the adjustment process. Thus, Kimmel was authorized to waive Zurich’s privilege.
¶22 In sum, we conclude the District Court properly applied the law in determining the attorney-client privilege does not authorize Roscoe to withhold the Maynard Letter. Roscoe was not a party to the action, nor did it share a common legal interest in Zurich’s adjustment of the workers’ compensation claim. Zurich’s disclosure of the letter via Kimmel to Roscoe constitutes a waiver of its attorney-client privilege.
¶23 3. Whether the Maynard Letter is protected by the work product doctrine.
¶24 While the District Court properly concluded the attorney-client privilege did not apply, it failed to conduct a separate analysis of the work product doctrine, stating only that because Roscoe had no legal interest in the matter, waiver of the work-product privilege necessarily followed. Zurich argues this approach was flawed, because Roscoe was not its “adversary” in the workers’ compensation proceeding. Zurich is correct that waiver of the attorney-client privilege by voluntary disclosure does not necessarily waive confidentiality of attorney work *308 product. U.S. v. Deloitte LLP, 610 F.3d 129, 139 (D.C. Cir. 2010). The purpose of the two privileges differs. The attorney-client privilege protects confidential communications, thereby promoting the attorney-client relationship and the functioning of the legal system. Westinghouse, 951 F.2d at 1428. By contrast, the work product doctrine serves the adversarial process directly ‘by enabling attorneys to prepare cases without fear that their work product will be used against their clients.” Westinghouse, 951 F.2d at 1428 (citing Hickman v. Taylor, 329 U.S. 495, 510-11, 67 S. Ct. 385, 393-94 (1947)). Critical to the distinction is whether the disclosure “enable[s] an adversary to gain access to the information.” Westinghouse, 951 F.2d at 1428; Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure vol. 8, §2024, 531-32 (3d ed., West 2010) (“[t]he purpose of the work-product rule ‘is not to protect the evidence from disclosure to the outside world but rather to protect it only from knowledge of opposing counsel and his client.’”). The mere disclosure itself, therefore, does not trigger waiver of work product protection.
¶25 We discussed in Palmer the great protections to be afforded to opinion work product, setting a high bar against compelled production. Our discussion concluded with the observation that “materials that contain the mental impressions and opinions of [counsel] are immune from discovery under the work-product doctrine, unless a waiver occurred.” Palmer, 261 Mont. at 118, 861 P.2d at 912. We partially analyzed disclosure in the insurer-insured context in In re Rules. There, we analyzed client confidentiality obligations under Rule 1.6, M. R. Prof. Conduct, which is broader in both scope and protection than the attorney-client privilege and the work product doctrine. In re Rules, ¶ 77. The case dealt with unauthorized disclosures by insured’s counsel to third-party auditors, whom the Court found were not ‘heeded in the representation” or “appropriate ... to a consultation.” In re Rules, ¶ 71. In fact, third-party auditors stood in potential conflict with the interests of the insured, as their mission is partially to find fault with legal charges. In re Rules, ¶ 75. The Court made clear it was not holding “that the disclosure of detailed descriptions of professional services to a third-party auditor necessarily violates any privilege that may attach to them. Resolution of that issue would clearly entail findings of fact that we have not made in the present case.” In re Rules, ¶ 73. This case requires more exacting analysis of when disclosure to a third party nullifies work product protection.
¶26 The purpose underlying the work product doctrine requires us to distinguish between disclosures to adversaries and disclosures to non- *309 adversaries. Westinghouse, 951 F.2d at 1428. Disclosure only waives work product protection if it is “inconsistent with the maintenance of secrecy from the disclosing party’s adversary .’’Deloitte, 610 F.3d at 140 (quoting Rockwell Int'l Corp. v. U.S. Dep’t of Justice, 235 F.3d 598, 605 (D.C. Cir. 2001)). Further, when determining if a party is or is not an adversary, “the question is not whether [the employer] could be the [insurer]’s adversary in any conceivable future litigation, but whether [the employer] could be [the insurer’s] adversary in the sort of litigation the [documents in question] address.” Deloitte, 610 F.3d at 140; see also Kimberly-Clark Worldwide v. First Quality Baby Prods., LLC, 2011 U.S. Dist. LEXIS 133551, **7-8 (E.D. Wis. 2011).
¶27 If the disclosure is to a non-adversary, but the recipient is a “conduit” to an adversary, the court examines whether the disclosing party had a reasonable basis for believing the recipient would keep the disclosed material confidential. Deloitte, 610 F.3d at 141. A reasonable expectation of confidentiality may derive from “common litigation interests between the disclosing party and the recipient” or “may be rooted in a confidentiality agreement or similar arrangement between the disclosing party and the recipient.” Deloitte, 610 F.3d at 141. Absent common interests, we inquire as to whether a confidentiality agreement or other assurance gave the disclosing party a reasonable expectation that the recipient would keep its work product confidential. Deloitte, 610 F.3d at 142. In Deloitte, the court concluded the disclosing party had a reasonable expectation the recipient would keep the information confidential because the recipient was bound by rules of professional conduct governing accountants, which include confidentiality requirements. 610 F.3d at 142.
¶28 We conclude that Roscoe was neither an adversary of Zurich nor necessarily a conduit to Peters. As recognized by the District Court, Roscoe had no legal interest in the adjustment of Peters’s claim. While Roscoe was not adversarial to Zurich, its overlapping relationship with both Peters and Zurich makes Zurich’s expectations of confidentiality in Roscoe during the claims adjustment process unreasonable. Given the law expressly excluding Roscoe from participation in and liability for the claim, there could be no basis for either a confidentiality agreement or assurances of confidentiality. ‘Common sense suggests that there can be no joint defense agreement when there is no joint defense to pursue.” In re Grand Jury Subpoena, 274 F.3d 563, 575 (1st Cir. 2001).
¶29 The District Court did not apply the correct legal standard to the work product analysis, but it reached the proper conclusion. *310 Relying on the standards announced in Deloitte, we conclude that Roscoe’s effective status as a disinterested third party, and its preclusion by law from participating in the adjustment of the compensation claim, could not support a reasonable expectation that Zurich’s work product would be kept confidential. Zurich’s disclosure of the letter therefore waives work product protection. Our holding here does not impact work product protection where an insurer and insured have a common legal interest in the underlying litigation.
¶30 IT IS THEREFORE ORDERED that Zurich’s petition for a writ of supervisory control is dismissed.
DATED this 13th day of March, 2012.
CHIEF JUSTICE McGRATH, JUSTICES NELSON, COTTER, WHEAT and MORRIS concur.