**FILED**

06/13/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0581

DA 16-0581

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 140

ASURION SERVICES, LLC,

      Plaintiff and Appellee,

  v.

MONTANA INSURANCE
GUARANTY ASSOCIATION,

    Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis And Clark, Cause No. CDV-2015-104
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

        Geoffrey R. Keller, Adrianna Potts, Matovich, Keller & Murphy, P.C.,
Billings, Montana

     For Appellee:

        William O. Bronson, William O. Bronson, PLLC, Great Falls, Montana

     For Amicus Curiae:

        Mark Cadwallader, Special Assistant Attorney General, Montana
Department of Labor and Industry, Helena, Montana

              Submitted on Briefs: March 22, 2017
                   Decided: June 13, 2017

Filed:

_____
              Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Defendant Montana Insurance Guaranty Association (MIGA) appeals the August 29, 2016 order denying its motion for summary judgment by the First Judicial District Court, Lewis and Clark County. We address the following issue:

> *Whether the District Court erred by granting summary judgment to Asurion and denying summary judgment to MIGA based on the exclusivity provision of the Montana Workers' Compensation Act.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 Christy Harris is a former employee of National Electronics Warranty, LLC—now known as Asurion Services, LLC (Asurion)[1]—at its customer service facility in Great Falls. While employed by Asurion, Harris filed industrial injury claims for two different incidents, occurring on May 5, 2002, and September 4, 2002. Asurion was insured by Lumbermens Mutual Casualty Company (Lumbermens) as a Plan 2 employer under Montana's Workers' Compensation Act (WCA), § 39-71-101 et seq., MCA. Lumbermens accepted and adjusted Harris's workers' compensation claims until it was declared insolvent in May 2013. When Lumbermens went into liquidation, the MIGA assumed handling of Harris's claims pursuant to the Montana Insurance Guaranty Association Act (Guaranty Act), § 33-10-101, et seq., MCA. MIGA retained Western Guaranty Fund Services to adjust Harris's claims, which it continued to do through February 2015. In February 2015, MIGA notified Asurion that it was seeking recovery of benefits paid on Harris's claims pursuant to § 33-10-114(2), MCA, which provides, in pertinent part:

---

[1] All further references to the employer in this Opinion will be to "Asurion."

(2) The association has the right to recover from the following persons the amount of any "covered claim" paid on behalf of the person pursuant to this part:

(a) any insured whose net worth, on December 31 of the year preceding the date the insurer becomes an insolvent insurer, exceeds $50 million and whose liability obligations to other persons are satisfied in whole or in part by payments made under this part[.]

¶3 Asurion filed a declaratory judgment action, naming MIGA, Harris, and the Montana Department of Labor and Industry (DLI) as defendants. Harris and DLI were dismissed as parties, although DLI remained involved as amicus curiae. MIGA answered and filed a counterclaim, also seeking declaratory relief. Asurion and MIGA filed cross-motions for summary judgment.

¶4 The District Court granted Asurion's motion for summary judgment and denied MIGA's motion. The District Court concluded that § 33-10-114(2), MCA, did not afford MIGA relief because the WCA protects the employer by providing an exclusive remedy that frees the employer from potential liability claims by an employee. *See* § 39-71-411, MCA. The District Court held that because Asurion met its obligation to obtain workers' compensation insurance, it has no payment obligations to Harris; therefore, MIGA cannot base a claim for recovery on § 33-10-114(2), MCA. The District Court concluded: "[I]t would be illogical to conclude that an employer, protected from liability and removed from the benefits distribution process by law, is suddenly liable for all the payments made by MIGA because the insurer became insolvent."

3

**STANDARDS OF REVIEW**

¶5      We review de novo a district court's grant or denial of summary judgment, applying the same criteria of M. R. Civ. P. 56, as a district court. *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839 (citation omitted). Summary judgment is appropriate when the moving party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. M. R. Civ. P. 56(c)(3); *Bird v. Cascade Cnty.*, 2016 MT 345, ¶ 9, 386 Mont. 69, 386 P.3d 602. When there are cross-motions for summary judgment, a district court must evaluate each party's motion on its own merits. *Halenga v. Schwein*, 2007 MT 80, ¶ 18, 336 Mont. 507, 155 P.3d 1242. On cross-motions for summary judgment, where the district court is not called to resolve factual disputes and only draw conclusions of law, we review the district court's conclusions of law to determine whether they are correct. *Bud-Kal v. City of Kalispell*, 2009 MT 93, ¶ 15, 350 Mont. 25, 204 P.3d 738 (citation omitted).

**DISCUSSION**

¶6      *Whether the District Court erred by granting summary judgment to Asurion and denying summary judgment to MIGA based on the exclusivity provision of the Montana Workers' Compensation Act.*

¶7      With limited exceptions not applicable to this case, the WCA applies to all employers and employees. "An employer who has any employee in service under any appointment or contract of hire, expressed or implied, oral or written, shall elect to be bound by the provisions of compensation plan No. 1, 2, or 3." Section 39-71-401(1), MCA.

4

Asurion elected to be bound by the provisions of Plan 2, which provides for coverage through a licensed private insurance company.

¶8    Section 39-71-411, MCA, provides:

> For all employments covered under the Workers' Compensation Act or for which an election has been made for coverage under this chapter, the provisions of this chapter are exclusive . . . . *[A]n employer is not subject to any liability whatever* for the death of or personal injury to an employee covered by the Workers' Compensation Act or *for any claims for contribution or indemnity asserted by a third person from whom damages are sought on account of the injuries or death.*

(Emphasis added.)  As noted by the District Court, the Montana Constitution likewise provides for the nonliability of an insured employer:

> Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character.  No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable *except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen's Compensation Laws of this state.*

Mont. Const. art. II, § 16 (emphasis added).  Other than a basic duty to cooperate and assist its insurer, an employer insured under either Plan 2 or 3 has no role in the adjusting of its employee's workers' compensation claim.  *Am. Zurich Ins. Co. v. Mont. Thirteenth Judicial Dist. Court*, 2012 MT 61, ¶ 13, 364 Mont. 299, 280 P.3d 240.

¶9    Montana's Guaranty Act provides that when an insurer becomes insolvent and enters into liquidation, MIGA assumes most, if not all, of the insolvent insurers' financial obligations on first-party and third-party claims.  *See* §§ 33-10-101, et seq., MCA.  This statutory obligation includes workers' compensation claims:  "[MIGA] shall pay the full amount of any covered claim arising out of a workers' compensation or excess workers'

5

compensation policy . . . ." Section 33-10-105(1)(a)(ii)(B), MCA. Section 33-10-114(2)(a), MCA, generally authorizes MIGA to recover the amount of a "covered claim" paid from "any insured whose net worth, on December 31 of the year preceding the date the insurer becomes an insolvent insurer, exceeds $50 million and whose liability obligations to other persons are satisfied in whole or in part by payments made under this part."

¶10    Although the parties advance some ancillary arguments, the fundamental conflict in this case is between the exclusivity provision of the WCA, as set forth in § 39-71-411, MCA, and Article II, Section 16 of the Montana Constitution which insulate an insured employer from liability for an injured employee's workers' compensation claim, and § 33-10-114(2)(a), MCA, which would ordinarily allow MIGA to seek reimbursement from an insolvent insurer's insured whose net worth exceeds $50 million. Resolution of this conflict is dispositive of MIGA's right to seek reimbursement from Asurion.

¶11    MIGA argues that § 33-10-114(2), MCA, should be applied to workers' compensation insurance with the same force and effect as the statute applies to other property and casualty insurance. *See also* § 33-10-101(3), MCA ("[The Guaranty Act] shall apply to all kinds of direct insurance, except life, title, surety, disability, credit, mortgage guaranty, and ocean marine insurance"). MIGA also contends that when Lumbermens was declared insolvent, Asurion's insurance policy was "judicially cancelled" and, therefore, Asurion was no longer covered as a Plan 2 employer. At that

6

time, MIGA argues, Asurion effectively became an uninsured employer, and was no longer shielded from liability by the exclusivity provisions of the WCA.

¶12    Asurion argues the exclusive remedy doctrine set forth in § 39-71-411, MCA, and Article II, Section 16 of the Montana Constitution insulates employers like Asurion from what are essentially third-party indemnity claims by MIGA. Asurion contends the insurer's duty to pay claims under a Plan 2 arrangement is non-delegable. Asurion contends § 33-10-114(2), MCA, as relied on by MIGA, is the more general provision of law, contrary to the more specific provisions of the WCA, specifically § 39-71-411, MCA, concerning liability and indemnity. We agree.

¶13    The WCA provides an exclusive remedy that protects the employer from liability claims by employees and third parties if the employer has met its obligation to obtain workers' compensation insurance. The exclusive remedy provisions of the WCA found at § 39-71-411, MCA, and Article II, Section 16 of the Montana Constitution are more specific to a workers' compensation claim made by the employee of an insured employer than the general provisions of § 33-10-114, MCA, which apply to insurers generally. "In the construction of a statute, the intention of the legislature is to be pursued if possible. When a general and particular provision are inconsistent, the latter is paramount to the former, so a particular intent will control a general one that is inconsistent with it." Section 1-2-102, MCA.

¶14    Pursuant to § 39-71-411, MCA, insured employers are "not subject to any liability whatever . . . for any claims for contribution or indemnity asserted by a third person . . . ."

7

Asurion met its WCA obligation as a Plan 2 employer by securing coverage from Lumbermens. As such, it enjoys the protection of the exclusivity provisions of the WCA, and is not subject to any claims for contribution or indemnity asserted by MIGA.

¶15 We are also unpersuaded by MIGA's arguments that, upon Lumbermens' insolvency, Asurion effectively became an "uninsured employer," and was no longer compliant with the WCA. Harris's claims were made and accepted by Lumbermens in 2002, before Lumbermens' insolvency. Lumbermens' subsequent insolvency did not render Asurion an "uninsured employer" as MIGA contends. Section 39-71-501, MCA, specifically defines an "uninsured employer" as "an employer who has not properly complied with the provisions of 39-71-401." Asurion properly complied with § 39-71-401, MCA, by "elect[ing] to be bound by the provisions of compensation plan No. . . . 2." Lumbermens' subsequent insolvency did not render Asurion noncompliant with the WCA for purposes of the claims at issue in this case.

## CONCLUSION

¶16 "The exclusive remedy rule is perhaps the most firmly entrenched doctrine in workers' compensation law." *Stratemeyer v. Lincoln County*, 276 Mont. 67, 74, 915 P.2d 175, 179 (1996) (citing *Shea v. North Butte Mining Co.*, 55 Mont. 522, 179 P. 499 (1919)). It is the benefit employers receive from the quid pro quo compromise when they provide workers' compensation insurance coverage. *Walters v. Flathead Concrete Prods.*, 2011 MT 45, ¶ 12, 359 Mont. 346, 249 P.3d 913. Asurion provided workers' compensation coverage in this case, exactly as the WCA required. To deprive Asurion of the benefit of

8

the exclusive remedy by requiring it to reimburse MIGA for the benefits paid to Harris, despite Asurion's full compliance with the WCA, would strike at one of the very foundations of the workers' compensation system.

¶17    The judgment of the District Court is affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JIM RICE


Justice Dirk M. Sandefur, dissenting.

¶18    I dissent.  The essential lynchpin of the Majority opinion is the conclusion that MIGA's statutory claim for reimbursement of liability insurance proceeds paid to a work-comp claimant on behalf of an insolvent Plan 2 insurer is "essentially [a] third-party indemnity claim[]" against the employer in contravention of the exclusivity provision of § 39-71-411, MCA.  Without consideration of the meaning of "indemnity" or the qualifying statutory reference to third-parties "from whom damages are sought on account of" injury to an employee, the Majority's conclusion erroneously stretches the language and intent of § 39-71-411, MCA, too far in disregard of the perfectly harmonious, clear, and unambiguous provisions of the Montana Insurance Guaranty Association Act (MIGA Act).

¶19    In pertinent part, the exclusive remedy provision of the Montana Workers' Compensation Act (WCA) provides that "an employer is not subject to *any liability*

9

*whatever* for the death of or personal injury to" a covered employee "or for any claims for contribution or indemnity asserted by a third person from whom *damages* are sought *on account of the injuries or death*." Section 39-71-411, MCA (emphasis added). Though the WCA does not define the terms "contribution" or "indemnity," statutory terms having technical legal meaning are defined by their "peculiar and appropriate meaning in law." Section 1-2-106, MCA (construction of undefined statutory terms). "Contribution" is a limited statutory claim of right, by a joint tortfeasor against one or more others, for equitable apportionment of the damages caused by the combined tortious conduct of the multiple tortfeasors. *See* § 27-1-703(1), MCA (1997); *Consolidated Freightways Corp. of Delaware v. Osier*, 185 Mont. 439, 446, 605 P.2d 1076, 1080 (1979) (noting 1977 Montana statutory provision of limited right of contribution in derogation of common law principle of joint and several liability), *superseded on other grounds* by § 27-1-703, MCA (1981). No claim for contribution is at issue in this case.

¶20 Indemnity may refer to contract indemnity or equitable indemnity. Contract indemnity arises under "a contract by which one engages to save another from a legal consequence of the conduct of one of the parties or of some other person." Section 28-11-301, MCA. Indemnity is a contract "obligation by one party to make another whole for a loss that the other party has incurred." *Crone v. Crone*, 2003 MT 238, ¶ 30, 317 Mont. 256, 77 P.3d 167. Insurance is a form of contract indemnity where, by contract, "one undertakes to indemnify another or pay or provide a specified or determinable amount or benefit upon determinable contingencies." Section 33-1-201(5)(a), MCA.

10

¶21 Equitable indemnity "shifts the entire loss from one party compelled [by law] to bear it" to another who in equity should be responsible to "bear it instead." *Consolidated Freightways*, 185 Mont. at 447, 605 P.2d at 1081. A claim for equitable indemnity is a claim: (1) by a person without fault; (2) who is vicariously or otherwise imputed liable to a third-party for injury and damages caused by another's tortious conduct; and (3) for the amount the person had to pay to compensate the third-party for the injury and damages caused by the tortfeasor. *Poulsen v. Treasure State Indus., Inc.*, 192 Mont. 69, 82, 626 P.2d 822, 829 (1981); *Consolidated Freightways*, 185 Mont. at 447-48, 605 P.2d at 1081; *Crosby v. Billings Deaconess Hosp.*, 149 Mont. 314, 320, 426 P.2d 217, 220 (1967); *see also State ex rel. Deere & Co. v. Montana 5th Jud. Dist. Court*, 224 Mont. 384, 398-99, 730 P.2d 396, 405-06 (1986) (rejecting distinction between "active" negligence and merely "passive" or "secondary" negligence in re equitable indemnity) *superseded on other grounds by* § 27-1-703, MCA (1987). Indemnity "is an all-or-nothing proposition" that "proceeds from a different legal basis than contribution." *Cordier v. Stetson-Ross, Inc.*, 184 Mont. 502, 509, 604 P.2d 86, 90 (1979). Equitable indemnity is not applicable "where both parties are joint tortfeasors or in pari dilecto." *Poulsen*, 192 Mont. at 82, 626 P.2d at 829; *accord Consolidated Freightways*, 185 Mont. at 448, 605 P.2d at 1081. Accordingly, for purposes of § 39-71-411, MCA, a "claim for indemnity" is a claim: (1) against an employer; (2) by a third-party who is liable without fault for an employee's injury or death;[1]

---

[1] *See Deere*, 224 Mont. at 398-99, 730 P.2d at 405-06 (rejecting distinction between "active" negligence and merely "passive" or "secondary" negligence in re equitable indemnity).

11

(3) for the amount the third-party has to pay to compensate the employee or survivors; and

(4) for an injury or death caused by the conduct of the employer.

¶22    In contrast to the concepts of contribution and indemnity as referenced in § 39-71-411, MCA, the Montana Insurance Guaranty Association (MIGA) is a "nonprofit association of insurance companies" with the primary statutory duty to pay covered claims payable under an insurance policy issued by an insolvent insurer and left unpaid prior to the insolvency. *Howell v. State*, 263 Mont. 275, 281, 868 P.2d 568, 571 (1994); *accord* § 33-10-105(1)(a), MCA. MIGA essentially steps into the shoes of an insolvent insurer and is considered by law to be the insurer to the extent of the insolvent insurer's obligation under the policy. Section 30-10-105(1)(b), MCA. At issue here, the MIGA Act authorizes MIGA to recover from the insured the amount paid on behalf of an insolvent insurer if the insured has assets in excess of $50 million. Section 33-10-114(2)(a), MCA.

¶23    In lieu of common law liability for unintentional torts, every employer has a duty to provide workers' compensation insurance coverage to employees under one of three statutorily options. Sections 39-71-401(1), -411, MCA. Here, Asurion elected to provide work-comp insurance to its employees through Lumbermens, a private insurance provider. After a court of competent jurisdiction declared Lumbermens insolvent, MIGA stepped in and ultimately settled the underlying work-comp claim asserted by Asurion's employee. MIGA then sought reimbursement from Asurion pursuant to § 33-10-114(2)(a), MCA.

¶24    As a matter of law, MIGA's claim against Asurion is not a claim for contract indemnity. No contractual relationship existed between MIGA and Asurion. Though

12

MIGA statutorily filled the shoes of Asurion's insolvent insurer, it did so only "to the extent of" the insolvent insurer's obligation under the policy to compensate Asurion's employee for her work-related injury. Section 33-10-105(1)(b), MCA. Though related, MIGA's duty to satisfy the insolvent insurer's obligation to compensate the injured worker arose as a matter of statute independent of any contractual relationship between MIGA and the insolvent insurer, or between MIGA and Asurion. Thus, MIGA's claim against Asurion is not a claim for contract indemnity.

¶25 As a matter of law, MIGA's claim against Asurion is also not a claim for equitable indemnity. MIGA is not a third-party who, by virtue of its relationship to Asurion, was vicariously or otherwise imputed liable for a breach of duty owed to an employee by Asurion. MIGA's duty to compensate Asurion's employee did not arise from any vicarious or imputed duty of care. MIGA's duty to compensate Asurion's employee arose independently under the MIGA Act. Thus, MIGA's claim against Asurion was not a claim for equitable indemnity within the meaning of § 39-71-411, MCA.

¶26 This Court has previously recognized the difference between claims against employers that arise from a vicarious or imputed duty of care to an employee as distinct from those based on independent legal obligations. In *Cordier*, a paper mill worker employed by Champion International who was seriously injured on the job while operating an industrial gang saw asserted a negligence-based products liability claim against the manufacturer of the saw. *Cordier*, 184 Mont. at 504-05, 604 P.2d at 88. In turn, the manufacturer asserted third-party claims for contribution and indemnity against Champion

13

on the asserted ground that the employer negligently failed to adequately instruct, supervise, and warn its employees regarding the operation of the saw. *Cordier*, 184 Mont. at 505, 604 P.2d at 88. At the time, § 39-71-411, MCA, did not expressly exempt employers from third-party contribution and indemnity claims as it does now. *See* § 92-2004, R.C.M. (1947). In holding that § 39-71-411's general exemption of employers from "any liability whatever" precluded the third-party contribution and indemnity claims against the employer, this Court clearly distinguished an exclusivity-barred equitable indemnification claim arising from the employer's duty to provide work-comp coverage, from a permissible contract indemnification claim against an employer based on an independent legal obligation arising "separate and apart from any obligation owed through the injury to the employee." *Cordier*, 184 Mont. at 511-12, 604 P.2d at 90-91 (citing *DeShaw v. Johnson*, 155 Mont. 355, 472 P.2d 298 (1970)).

¶27 In *DeShaw*, a construction worker who was seriously injured by electrocution and falling from a utility pole while performing contract construction work asserted a negligence claim against the rural and electrical cooperatives that contracted with the worker's employer for the work. *DeShaw*, 155 Mont. at 356-57, 472 P.2d at 299-300. The cooperatives in turn asserted a third-party contract indemnity claim against the construction worker's employer. *DeShaw*, 155 Mont. at 356-57, 472 P.2d at 299-300. In holding that § 39-71-411, MCA (formerly § 92-203, R.C.M. (1947)), did not bar the indemnity claim based on a special contract provision wherein the employer agreed to indemnify the cooperatives for such liability, this Court rejected the assertion that the employer:

14

cannot be liable for more than workman's compensation benefits to its employees, that such compensation is the measure of [the employer's] full liability, and that it cannot be subjected to any additional liability to the third-party plaintiff or anyone else because of the injuries sustained by the [worker].

*DeShaw*, 155 Mont. at 359-61, 472 P.2d at 301-02. We noted that the immunity conferred by § 39-71-411, MCA:

*is only against actions for* damages *on account of the employee's injury*; a third-party's action for indemnity is not exactly for 'damages' but for reimbursement, and it is not 'on account of' the employee's injury, but on account of breach of an independent duty owed by the employer to the third party.

*DeShaw*, 155 Mont. at 361, 472 P.2d at 302 (internal quotation omitted and emphasis added). We thus concluded "that the legislature had in mind [only] those who might attempt to recover *through some relationship with the injured* [*worker*], and *not* anyone . . . who seeks to recover on *an obligation separate and apart from that owing to the injured employee*." *DeShaw*, 155 Mont. at 361, 472 P.2d at 302 (emphasis added).

¶28 While *Cordier* was still pending before this Court, the 1979 Montana Legislature prospectively amended § 39-71-411, MCA, to expressly preclude the type of third-party contribution and equitable indemnity claims at issue in *Cordier*. *See* § 39-71-411, MCA (1979) (as amended by Ch. 329, L. 1979 (SB 322)).[2] Neither the language nor legislative

---

[2] Clearly indicating Senate Bill 322's relation to the third-party contribution and indemnity claims at issue in *Cordier*, the bill's sponsor testified that its purpose was to expressly protect employers from the "new problem" that "emerged" from modern "developments in products liability law" wherein a third-party liable in tort for the design, manufacture, or sale of defective industrial equipment "then sues the employer for the amount sought by the employee on theory of implied or expressed indemnity." *Hearing on SB 322 Before the S. Judiciary Comm.*, 46th Leg., Reg. Sess. (Mont. 1979) (statement of Sen. John E. Healy). Champion International also testified in support of the bill, echoing Sen. Healy's statements and specifically citing the facts of *Cordier* as an

15

history of Ch. 329, L. 1979 (SB 322) evinces any indication of legislative intent to eliminate or limit the independent duty-based employer liability distinction recognized in *DeShaw* and *Cordier*. To the contrary, *Cordier* and the related language and legislative history of Ch. 329, L. 1979 (SB 322) clearly manifest that § 39-71-411's express exemption of employers from "any liability whatever" and its supplemental express bar on third-party indemnity claims certainly bar third-party *equitable* indemnity claims as in *Cordier*, but not related third-party claims based on an obligation to a third-party independently imposed by law on the employer.

¶29    Here, as in *DeShaw*, MIGA's independent statutory reimbursement claim against Asurion is not an equitable indemnity claim as in *Cordier* or within the meaning of § 39-71-411, MCA. Based on a reimbursement obligation independently imposed by statute, MIGA's claim is also not a contract indemnification claim. Even if arguably akin to a contract indemnification obligation, the claim would still be permissible under the distinction recognized in *DeShaw* and *Cordier* and which has now stood undisturbed by the Legislature for 47 years.

¶30    Moreover, as in *DeShaw* where the employer created the additional liability potential by entering into a construction contract with a special indemnification provision, Asurion's additional liability exposure under § 33-10-114(2)(a), MCA, was the result of its discretionary election to provide required work-comp insurance to its employees

---

example of the problem. *Hearing on SB 322 Before the S. Judiciary Comm.*, 46th Leg., Reg. Sess. (Mont. 1979) (statement of Champion International Corporation).

16

through a private insurer rather than through the State Fund or self-insurance. With express exceptions not applicable here, the MIGA Act applies to all "insurers" authorized by law to engage in the business of "insurance" in Montana. Sections 33-10-101(3), -102(4), -103, MCA; *see also* § 33-1-201(2), (5)(a), (6), MCA (definitions of authorized insurer, insurance, and insurer). Under the WCA, each employer has the option of choosing one of three statutorily authorized plans for providing required work-comp insurance. Section 39-71-401(1), MCA. Plan 1 allows a qualified employer to self-insure. Sections 39-71-2101 through -2109, MCA. Plan 2 allows employers to provide required insurance through any private insurance company authorized to transact business in Montana. Sections 39-71-2201 through -2215, MCA. Plan 3 allows employers to provide required insurance through the publicly administered State Fund. Sections 39-71-2311 through -2316, MCA.

¶31    A Plan 1 self-insurer is not an "insurer" subject to the Montana Insurance Code or the MIGA Act. *See* §§ 39-71-2101(1), 33-1-102(5), 33-2-201(5)(a), (6), 33-10-102(2), (3), MCA (definition of Plan 1 self-insurer, exemption from Insurance Code, definitions of insurance and insurer, MIGA Act applicability).[3]  Similarly, prior to 2015, the Plan 3 State Fund was also not an "insurer" subject to the Montana Insurance Code or MIGA coverage. *See* §§ 39-71-2311, -2312(3), 33-1-102(5), MCA (2013) (definition of Plan 3,

_____

[3] Plan 1 self-insured employers are instead subject to requirements for annual proof and approval of self-insurability from the Montana Department of Labor and Industry and MIGA, joint and several liability, excess liability coverage, and a supplemental security deposit or bonding. *See* § 39-71-2101 through -2109, MCA.

express exemption from Insurance Code, and MIGA Act applicability).[4] Consequently, an election to provide required work-comp coverage under Plans 1 or 3 would not have subjected Asurion to potential MIGA reimbursement liability under § 33-10-114(2), MCA.

¶32     In contrast, the MIGA Act applied to Plan 2 work-comp insurance carriers at all times pertinent, thus requiring them, inter alia, to contribute to the pooled costs of adjusting MIGA-covered claims.  *See* §§ 39-71-2201(1), 33-10-101(3), -102(4), -103, -106(2), and -116, MCA (definition of Plan 2 insurer, MIGA Act applicable "to all kinds of direct insurance, except life, title, surety, disability, credit, mortgage guaranty, and ocean marine insurance," definition of MIGA member, imposition of MIGA membership as condition of authority to transact business in Montana, member duty to comply with MIGA plan of operation, and MIGA assessment authority).  By electing to provide required work-comp insurance through a Plan 2 insurer, Asurion *exposed itself* to additional potential liability under § 33-10-114(2), MCA, in the event that its selected private insurer became insolvent. As in *DeShaw*, Asurion's additional liability is not for damages on account of work-related injury to an employee but, rather, for an obligation independently imposed by law.

¶33     The WCA and MIGA Act are both creations of the Legislature.  The Legislature presumably "does not intend to interfere with" its prior enactments unless expressly stated

---

[4] In 2015, the Legislature repealed the State's Fund's prior Montana Insurance Code exemption, expressly subjected it to general Insurance Code regulation as an "authorized insurer," as defined by § 33-1-201(2), (5)(a), (6), MCA, and continued to expressly exempt it from the MIGA Act.  *See* §§ 33-1-102(5), -115(1), (3)(a)(iv), MCA (Ch. 320, §§ 1 and 5, L. 2015 (SB 123)).

or a subsequent enactment is irreconcilable with a prior one. *Alkire v. Mun. Court*, 2008 MT 223, ¶ 11, 344 Mont. 260, 186 P.3d 1288 (internal quotation omitted). The Legislature is presumed to act deliberately with full knowledge of existing law on a subject. *State v. Brendal*, 2009 MT 236, ¶ 18, 351 Mont. 395, 213 P.3d 448. This Court must harmonize statutes where possible to give effect to both in accordance with the Legislature's plain language and manifest intent. *See Brendal*, ¶ 18. No need or justification exists for resort to statutory construction of a specific provision over a more general provision where both provisions are clear, unambiguous, and not in conflict. *Van Orden v. United Servs. Auto. Ass'n*, 2014 MT 45, ¶ 18, 374 Mont. 62, 318 P.3d 1042.

¶34 No conflict exists between the exclusivity provision of § 39-71-411, MCA, and the MIGA Act reimbursement provision of § 33-10-114(2)(a), MCA. Neither is more specific than the other. The Legislature was well aware of the WCA exclusivity provision as it existed in 1971 at the time of enactment of the MIGA Act. The 1979 amendment of § 39-71-411, MCA, to expressly bar claims against employers "for contribution or indemnity asserted by a third person from whom damages are sought on account of the injuries or death" of a covered employee had nothing to do with the MIGA Act in general or § 33-10-114(2)(a), MCA, in particular. The 1979 amendment was a specific legislative response to a specific problem, *i.e.*, the type of contribution and equitable indemnity claims at issue in *Cordier*. Nothing more.

¶35 In 2007, the Legislature enacted § 39-71-2215, MCA, to require Plan 2 insurers to post a security deposit to further secure their insurance obligation to injured workers.

19

Ch. 117, § 15, L. 2007 (SB 108). *Inter alia*, the 2007 enactment authorized the Department of Labor and Industry to release all or part of a security deposit to MIGA in the event of a Plan 2 insurer's insolvency and MIGA assumption of the insurer's obligations. Section 39-71-2215(5), MCA. The 2007 Legislature also exempted Plan 2 captive reciprocal insurers from the MIGA Act. Section 39-71-2201(3), MCA (Ch. 117, § 10, L. 2007). Though prospective in effect, these 2007 WCA amendments clearly evidence the Legislature's prior provision, intent, and understanding that the 1971 MIGA Act has always applied to Plan 2 insurers except as the Legislature has otherwise expressly provided.

¶36 Thus, it has always been and remains the express provision and intent of the Legislature that the MIGA Act reimbursement provision of § 33-10-114(2), MCA, apply to non-captive Plan 2 insurers with assets in excess of $50 million. This construction of the WCA and MIGA Act is not a judicial erosion of the essential public policy compromise embodied in the WCA. This construction effects the manifest intent of the Legislature in both enactments. It is purely the result of a legislative prerogative that the Legislature is free to further address as it sees fit. The District Court erroneously concluded that the exclusivity provision of § 39-71-411, MCA, precludes application of the MIGA reimbursement provision of § 33-10-114(2), MCA, in this case. I would reverse and remand for further proceedings. I dissent.

/S/ DIRK M. SANDEFUR

20