JUSTICE SHEA
delivered the Opinion of the Court.
¶1 Defendant Montana Insurance Guaranty Association (MIGA) appeals the August 29, 2016 order denying its motion for summary judgment by the First Judicial District Court, Lewis and Clark County. We address the following issue:

Whether the District Court erred by granting summary judgment to Asurion and denying summary judgment to MIGA based on the exclusivity provision of the Montana Workers’ Compensation Act.

PROCEDURAL AND FACTUAL BACKGROUND
¶2 Christy Harris is a former employee of National Electronics Warranty, LLC—now known as Asurion Services, LLC (Asurion)[1]—at its customer service facility in Great Falls. While employed by Asurion, Harris filed industrial injury claims for two different incidents, occurring on May 5,2002, and September 4,2002. Asurion was insured by Lumbermens Mutual Casualty Company (Lumbermens) as a Plan 2 employer under Montana’s Workers’ Compensation Act (WCA), § 39-71-101 et seq., MCA. Lumbermens accepted and adjusted Harris’s workers’ compensation claims until it was declared insolvent in May 2013. When Lumbermens went into liquidation, the MIGA assumed handling of Harris’s claims pursuant to the Montana Insurance Guaranty Association Act (Guaranty Act), § 33-10-101, et seq., MCA. MIGA retained Western Guaranty Fund Services to adjust Harris’s *485 claims, which it continued to do through February 2015. In February 2015, MIGA notified Asurion that it was seeking recovery of benefits paid on Harris’s claims pursuant to § 33-10-114(2), MCA, which provides, in pertinent part:
(2) The association has the right to recover from the following persons the amount of any “covered claim” paid on behalf of the person pursuant to this part:
(a) any insured whose net worth, on December 31 of the year preceding the date the insurer becomes an insolvent insurer, exceeds $50 million and whose liability obligations to other persons are satisfied in whole or in part by payments made under this part[.]
¶3 Asurion filed a declaratory judgment action, naming MIGA, Harris, and the Montana Department of Labor and Industry (DLI) as defendants. Harris and DLI were dismissed as parties, although DLI remained involved as amicus curiae. MIGA answered and filed a counterclaim, also seeking declaratory relief. Asurion and MIGA filed cross-motions for summary judgment.
¶4 The District Court granted Asurion’s motion for summary judgment and denied MIGA’s motion. The District Court concluded that § 33-10-114(2), MCA, did not afford MIGA relief because the WCA protects the employer by providing an exclusive remedy that frees the employer from potential liability claims by an employee. See § 39-71-411, MCA. The District Court held that because Asurion met its obligation to obtain workers’ compensation insurance, it has no payment obligations to Harris; therefore, MIGA cannot base a claim for recovery on § 33-10-114(2), MCA. The District Court concluded: “[I]t would be illogical to conclude that an employer, protected from liability and removed from the benefits distribution process by law, is suddenly liable for all the payments made by MIGA because the insurer became insolvent.”
STANDARDS OF REVIEW
¶5 We review de novo a district court’s grant or denial of summary judgment, applying the same criteria of M. R. Civ. P. 56, as a district court. Pilgeram v. GreenPoint Mortg. Funding, Inc., 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839 (citation omitted). Summary judgment is appropriate when the moving party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. M. R. Civ. P. 56(c)(3); Bird v. Cascade Cnty., 2016 MT 345, ¶ 9, 386 Mont. 69, 386 P.3d 602. When there are cross-motions for summary judgment, a district court must evaluate each party’s motion *486 on its own merits. Halenga v. Schwein, 2007 MT 80, ¶ 18, 336 Mont. 507, 155 P.3d 1242. On cross-motions for summary judgment, where the district court is not called to resolve factual disputes and only draw conclusions of law, we review the district court’s conclusions of law to determine whether they are correct. Bud-Kal v. City of Kalispell, 2009 MT 93, ¶ 15, 350 Mont. 25, 204 P.3d 738 (citation omitted).
DISCUSSION
¶6 Whether the District Court erred by granting summary judgment to Asurion and denying summary judgment to MIGA based on the exclusivity provision of the Montana Workers’ Compensation Act.
¶7 With limited exceptions not applicable to this case, the WCA applies to all employers and employees. “An employer who has any employee in service under any appointment or contract of hire, expressed or implied, oral or written, shall elect to be bound by the provisions of compensation plan No. 1, 2, or 3.” Section 39-71-401(1), MCA. Asurion elected to be bound by the provisions of Plan 2, which provides for coverage through a licensed private insurance company.
¶8 Section 39-71-411, MCA, provides:
For all employments covered under the Workers’ Compensation Act or for which an election has been made for coverage under this chapter, the provisions of this chapter are exclusive .... [A]n employer is not subject to any liability whatever for the death of or personal injury to an employee covered by the Workers’ Compensation Act or for any claims for contribution or indemnity asserted by a third person from whom damages are sought on account of the injuries or death.
(Emphasis added.) As noted by the District Court, the Montana Constitution likewise provides for the nonliability of an insured employer:
Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character. No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen’s Compensation Laws of this state.
Mont. Const. art. II, § 16 (emphasis added). Other than a basic duty to cooperate and assist its insurer, an employer insured under either Plan 2 or 3 has no role in the adjusting of its employee’s workers’ compensation claim. Am. Zurich Ins. Co. v. Mont. Thirteenth Judicial *487 Dist. Court, 2012 MT 61, ¶ 13, 364 Mont. 299, 280 P.3d 240.
¶9 Montana’s Guaranty Act provides that when an insurer becomes insolvent and enters into liquidation, MIGA assumes most, if not all, of the insolvent insurers’ financial obligations on first-party and third-party claims. See §§ 33-10-101, et seq., MCA. This statutory obligation includes workers’ compensation claims: “[MIGA] shall pay the full amount of any covered claim arising out of a workers’ compensation or excess workers’ compensation policy....” Section 33-10-105(1)(a)(ii)(B), MCA. Section 33-10-114(2)(a), MCA, generally authorizes MIGA to recover the amount of a “covered claim” paid from “any insured whose net worth, on December 31 of the year preceding the date the insurer becomes an insolvent insurer, exceeds $50 million and whose liability obligations to other persons are satisfied in whole or in part by payments made under this part.”
¶10 Although the parties advance some ancillary arguments, the fundamental conflict in this case is between the exclusivity provision of the WCA, as set forth in § 39-71-411, MCA, and Article II, Section 16 of the Montana Constitution which insulate an insured employer from liability for an injured employee’s workers’ compensation claim, and § 33-10-114(2)(a), MCA, which would ordinarily allow MIGA to seek reimbursement from an insolvent insurer’s insured whose net worth exceeds $50 million. Resolution of this conflict is dispositive of MIGA’s right to seek reimbursement from Asurion.
¶11 MIGA argues that § 33-10-114(2), MCA, should be applied to workers’ compensation insurance with the same force and effect as the statute applies to other property and casualty insurance. See also § 33-10-101(3), MCA (“[The Guaranty Act] shall apply to all kinds of direct insurance, except life, title, surety, disability, credit, mortgage guaranty, and ocean marine insurance”). MIGA also contends that when Lumbermens was declared insolvent, Asurion’s insurance policy was “judicially cancelled” and, therefore, Asurion was no longer covered as a Plan 2 employer. At that time, MIGA argues, Asurion effectively became an uninsured employer, and was no longer shielded from liability by the exclusivity provisions of the WCA.
¶12 Asurion argues the exclusive remedy doctrine set forth in § 39-71-411, MCA, and Article II, Section 16 of the Montana Constitution insulates employers like Asurion from what are essentially third-party indemnity claims by MIGA. Asurion contends the insurer’s duty to pay claims under a Plan 2 arrangement is non-delegable. Asurion contends § 33-10-114(2), MCA, as relied on by MIGA, is the more general provision of law, contrary to the more specific provisions of the WCA, specifically § 39-71-411, MCA, concerning liability and indemnity. We *488 agree.
¶13 The WCA provides an exclusive remedy that protects the employer from liability claims by employees and third parties if the employer has met its obligation to obtain workers’ compensation insurance. The exclusive remedy provisions of the WCA found at § 39-71-411, MCA, and Article II, Section 16 of the Montana Constitution are more specific to a workers’ compensation claim made by the employee of an insured employer than the general provisions of § 33-10-114, MCA, which apply to insurers generally. “In the construction of a statute, the intention of the legislature is to be pursued if possible. When a general and particular provision are inconsistent, the latter is paramount to the former, so a particular intent will control a general one that is inconsistent with it.” Section 1-2-102, MCA.
¶14 Pursuant to § 39-71-411, MCA, insured employers are “not subject to any liability whatever ... for any claims for contribution or indemnity asserted by a third person ....” Asurion met its WCA obligation as a Plan 2 employer by securing coverage from Lumbermens. As such, it enjoys the protection of the exclusivity provisions of the WCA, and is not subject to any claims for contribution or indemnity asserted by MIGA.
¶15 We are also unpersuaded by MIGA’s arguments that, upon Lumbermens’ insolvency, Asurion effectively became an “uninsured employer,” and was no longer compliant with the WCA. Harris’s claims were made and accepted by Lumbermens in 2002, before Lumbermens’ insolvency. Lumbermens’ subsequent insolvency did not render Asurion an “uninsured employer” as MIGA contends. Section 39-71-501, MCA, specifically defines an “uninsured employer” as “an employer who has not properly complied with the provisions of 39-71-401.” Asurion properly complied with § 39-71-401, MCA, by “electfing] to be bound by the provisions of compensation plan No. ... 2.” Lumbermens’ subsequent insolvency did not render Asurion noncompliant with the WCA for purposes of the claims at issue in this case.
CONCLUSION
¶16 “The exclusive remedy rule is perhaps the most firmly entrenched doctrine in workers’ compensation law.” Stratemeyer v. Lincoln County, 276 Mont. 67, 74, 915 P.2d 175, 179 (1996) (citing Shea v. North Butte Mining Co., 55 Mont. 522, 179 P. 499 (1919)). It is the benefit employers receive from the quid pro quo compromise when they provide workers’ compensation insurance coverage. Walters v. *489 Flathead, Concrete Prods., 2011 MT 45, ¶ 12, 359 Mont. 346, 249 P.3d 913. Asurion provided workers’ compensation coverage in this case, exactly as the WCA required. To deprive Asurion of the benefit of the exclusive remedy by requiring it to reimburse MIGA for the benefits paid to Harris, despite Asurion’s full compliance with the WCA, would strike at one of the very foundations of the workers’ compensation system.
¶17 The judgment of the District Court is affirmed.
CHIEF JUSTICE McGRATH, JUSTICES WHEAT and RICE concur.

All further references to the employer in this Opinion will be to “Asurion.’